## AMALGAMATED SUGAR CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

### No. 3457.   Decided April 2, 1920.   (189 Pac. 69.)

1. MASTER AND SERVANT—FINDING OF INDUSTRIAL COMMISSION UNDER COMPENSATION ACT BINDING ON REVIEWING COURT. Finding of the Industrial Commission making an award under the Workmen's Compensation Act must be sustained by the courts where supported by substantial evidence.[1]

2. MASTER AND SERVANT—AWARD OF COMPENSATION FOR DEATH FROM INJURIES IN EMPLOYMENT HELD SUPPORTED BY EVIDENCE. Award by the Industrial Commission in favor of the widow of deceased servant made on the theory that the servant died as a result of carbon monoxide poison .incurred during his employment *held* supported by substantial evidence.

Original proceedings by the Amalgamated Sugar Company, employer, and the Continental Casualty Company, insurer, to review an award of the Industrial Commission of Utah awarding compensation under the Workmen's Compensation Act in favor of Annie C. Benson.

AWARD AFFIRMED.

*George H. Smith* and *R. B. Porter,* both of Salt Lake City, for plaintiff.

*Dan E. Shields,* Atty. Gen., and *Jas. H. Wolfe, O. C. Dalby,* and *H. Van Dam, Jr.,* Asst. Atty. Gen., for defendant.

CORFMAN, C. J.

This matter was. brought on for review before this court under the provisions of Comp. Laws Utah 1917, section 3148, as amended by chapter 63, Laws Utah 1919 (section 3148a, page 164), upon the application of plaintiffs for a writ of

[1]*Industrial Commission* v. *Evans* 52 Utah 394, 174 Pac. 825; *Murray City* v. *Industrial Commission,* 55 Utah 44, 183 Pac. 331.

certiorari wherein it was alleged that the Industrial Commission of Utah had exceeded its jurisdiction by rendering a decision and in making an award to Annie C. Benson for the use and benefit of herself and her minor children. Such writ was issued by this court February 25, 1920. In compliance with the writ the Industrial Commission (hereinafter referred to as Commission) certified to this court a record of its proceedings, including the evidence taken before it in the case.

It appears that Alma Peter Benson died December 14, 1918. while in the employ of the Amalgamated Sugar Company at Smithfield, Utah. On September 10, 1919, Annie C. Peterson, his widow, for and in behalf of herself and as the guardian of the minor children of said Alma Peter Benson and as administratrix of the estate of said decedent, filed with the Commission a claim for compensation, alleging that the death of decedent had been caused by an accident arising out of and in the course of his said employment with said Amalgamated Sugar Company, a corporation. Thereafter a hearing was had upon said application before B. D. Nebeker, as referee for the commission, and evidence taken and received in behalf of the respective parties, claimants, and the said Amalgamated Sugar Company, and a return and report made by said referee that the death of the said Benson had not been caused by reason of an accident arising out of and in the course of his employment with the said Amalgamated Sugar Company. The majority of the members of the Commission refused to adopt the report and finding of the said referee, and thereafter, December 6, 1919, the said Commission, through its said majority members, rendered a decision and made an order awarding the said claimants the compensation now complained of by the petitioners herein.

The only question raised and presented to this court for consideration is whether or not there is any substantial testimony in the record which tends to support the finding of the Commission that the death of the said Benson was occasioned by accidental causes arising out of and in the course of his employment with the Amalgamated Sugar Company.

The testimony shows that the decedent, Benson, was, at the time of the alleged accident, a common laborer, fifty-eight years of age, residing with his family at Newton, Utah, about six miles distant from the sugar factory of petitioner Amalgamated Sugar Company. In the evening of December 13, 1918, he walked from his home to the sugar factory, where he was employed, and went to work at 9:30 p. m. wheeling lime with a wheelbarrow from a limeroom out of a large kiln, cylindrical in form, which extended from the floor to the ceiling in said room. Near the top the kiln was provided with an iron pipe for carrying off the gases generated in the burning of the lime rock with coke. At the bottom of the kiln was an opening for shoveling out the lime when burnt. The testimony shows that carbon monoxide gas was generated by the burning process, and a pump was operated for the purpose of drawing off from the burning lime the gases thus generated. If the pump stopped or the kiln fires became low, gases escaped into the room. According to the testimony, when these gases escaped into the kilnroom the lives of the empolyés were menaced, and it became necessary for them to vacate the kilnroom. Benson commenced his work at 9:30 o'clock in the evening, and continued until about 1 o'clock the following morning, when he stopped to eat his lunch. When not engaged in wheeling lime from the kiln he sat in his wheelbarrow near the base of the kiln. About a half hour after eating his lunch, or at 1:30 o'clock a. m., he was taken violently ill and suffered greatly with pains in his chest and arms. His fellow employés then took him home, where he continued to suffer in the same way for four or five hours longer, when he died. Subsequently a post mortem examination was made by Drs. E. P. Oldham and H. K. Merrill, upon the result of which they expressed their opinion that the decedent had died from carbon monoxide poisoning contributed to by "coronary sclerosis," but that the immediate cause of death was carbon monoxide.

The theory of plaintiffs was that death was caused by acute bronchial pneumonia. In support of this theory Drs. Richard R. Ruper and Clarence Snow testified at great length. Con-

flicting testimony, therefore, was offered and received in support of the respective theories. The physical conditions, machinery, and appliances used in operating the plant were described in detail for the purpose of showing both the probability and the improbability of the gases escaping into the limeroom where the deceased had worked. The previous health and physical condition of the deceased were gone into and testified to by many witnesses. His appearance and symptoms attending the short illness were described. Blood tests and examinations of lung tissues were made by experts upon the result of which conflicting opinions were expressed by the medical experts who testified in the case. **1, 2** The medical experts widely differed in their opinions as to the cause of death. It would subserve no good purpose to review the testimony in detail which tends to support the conflicting theories of the respective parties. In this class of cases, under our statutes, this court is confined to a review of the testimony and findings of the Commission for the sole purpose of determining whether or not there is any substantial evidence in the record to support the award made by the Commission to the claimants. If there is any substantial evidence in the record to support the findings of the Commission, and the ultimate facts found by the Commission support the award, we, as a reviewing court, under our statutes, cannot do otherwise than enter judgment affirming the award made by the Commission. *Industrial Com.* v. *Evans,* 52 Utah 394, 174 Pac. 825; *Murray City* v. *Industrial Com.,* 55 Utah 44, 183 Pac. 331.

By a majority of the members of the Commission in this case it was found:

"It appears that in general the decedent up to the time of his death had had good health; that some six weeks prior thereto he had had a light case of 'flu' which had kept him at home for about ten days, but which had not kept him in bed; that prior to about 1:30 A. M., on the morning of the 14th he had made no complaint and manifested no signs of illness; that he worked that night in the limeroom, where lime dust was present and where gases were generated, and that a pump was kept in constant operation to take the gases out of the room; that at least two other employés had at previous times been affected by gas while working in the lime-

room. An autopsy was performed by two doctors, who testified that the cause of death was carbon monoxide poisoning. * * * The facts, or rather the conclusions drawn from the facts by the medical experts, are vigorously disputed by the defendants [petitioners here]. Two doctors produced by the defendants testified that the facts developed at the autopsy showed that the death could not have been due to carbon monoxide poisoning, but that it was due to dilatation of the heart caused by an acute attack of bronchial pneumonia. * * * The majority of the Commission, after a most careful consideration of this case, arrived at the conclusion that the truth is that * * * the immediate cause of death was carbon monoxide poisoning."

We find there is substantial evidence to support the findings and award made by the Commission. It is therefore ordered that the award made herein by the Industrial Commission of Utah be, and the same is hereby, affirmed; costs to be taxed against plaintiffs.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.