## ODOM v. INDEMNITY INS. CO. OF NORTH AMERICA.

### No. 1730.

Court of Civil Appeals of Texas. Eastland.

Dec. 17, 1937.

Rehearing Denied Jan. 14, 1938.

Kirby, King & Overshiner, of Abilene, for appellant.

Jas. H. Beall, Jr., of Sweetwater, and Barnes & Barnes, of Beaumont, for appellee.

LESLIE, Chief Justice.

This is presented as a case coming under the Workmen's Compensation Law of Texas, Vernon's Ann.Civ.St. art. 8306 et seq. Charles K. Odom instituted this suit against

the Indemnity Insurance Company of North America, insurer of Gulf Refining Company (employer), to recover compensation by reason of an injury alleged to have been sustained by him in the course of his employment. The board rejected the claim. The trial court sustained the general demurrer and several special exceptions to the plaintiff's petition, and he appeals. The parties will be referred to as in the trial court.

The ruling of the court on the special exceptions becomes immaterial under the circumstances. The judgment will be tested by the ruling on the general demurrer. Reasoner v. Gulf, C. & S. F. Ry. Co., 109 Tex. 204, 203 S.W. 592; Fleming v. Stringer, Tex.Civ.App., 225 S.W. 801; De Everett v. Henry, 67 Tex. 402, 405, 3 S.W. 566; 3 Tex.Jur. 1021.

Of course, it is the plaintiff's contention that the petition states a cause of action for a compensable injury. We, therefore, pass to a consideration of the assignment complaining that the court erred in sustaining the general demurrer. The defendant (insurance carrier) advances several propositions in justification of the court's ruling. The petition is lengthy, and only such parts will be set forth or referred to as are necessary to reflect the reasons for this court's conclusions. Suffice it to say that we have carefully examined the allegations of the petition, indulging in favor of it all reasonable intendments, and we conclude that the trial court did not err in sustaining the general demurrer and dismissing the plaintiff's suit upon his failure to amend.

The plaintiff alleges that as an employee of the Gulf Refining Company it was his duty to watch the gauge and control the vapor pressure from the still to the condenser. That ordinarily there was an automatic control manipulated from the ground and that when the same did not work for any reason it was his duty to ascend to a "steel walk" or "top deck" of the oil refinery and control the same by "hand valve." In the performance of such duties he alleges that he "accidentally inhaled hydrogen sulphide and noxious gases on or about December 15, 1929, and at various times thereafter, * * * but same did not injure him at said times so as to disable him from following the duties of his employment and he was not thereby prevented from following the duties of his employment, until on or about March 28, 1936, and he was not injured within the meaning of the term 'injury'

as used in article 8307, § 4a, until the disease of tuberculosis naturally resulting from the inhalations of said gas, or being aggravated thereby, caused said damage or harm to the physical structure of his body as to disable him from following the duties of his employment, which disability occurred on or about the 28th day of March, 1936, as aforesaid, and within 30 days thereafter, plaintiff gave notice of such injury to his employer by mailing said employer a formal notice of said injury on the 18th day of April, 1936 * * * and within six months thereafter on, to-wit, the 20th day of April, 1936, plaintiff made claim for compensation with respect to said injury by filing said claim with the Industrial Accident Board of Texas * * *."

Other allegations of an alternative nature, referring especially to the above allegations, will be hereinafter set out. If the plaintiff is proceeding upon the theory that the development of incapacity of date March 28, 1936, is his injury, which is evidenced by alleging notice and filing of claim within 30 days and 6 months, respectively, from March 28, 1936, then clearly there can be no recovery on such facts standing alone, since the incapacity appears to be the result of injuries received more than six years prior to March 28, 1936. Williams v. Safety Cas. Co., Tex.Sup., 102 S.W.2d 178; Texas Emp. Ins. Ass'n v. Guidry, Tex.Com.App., 99 S.W.2d 900; Jones v. Texas Emp. Ins. Ass'n, Tex.Com.App., 99 S.W.2d 903; Williamson v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088; Texas Indemnity Ins. Co. v. Barker, Tex.Civ.App., 82 S.W.2d 389. By these authorities it is settled that the development of incapacity is not necessarily the date of the injury, and in this particular case the pleading shows that it is not the date.

Further, if the alleged good cause, presently to be discussed, for not giving notice in thirty days and filing claim in six months is based upon the date of injury, as alleged, namely, March 28, 1936, then such allegations of good cause would appear to be meaningless. As we read the pleading, the notice and claim purport to have been actually given and filed, respectively, within thirty days from March 28, 1936. Notwithstanding these allegations pertaining to good cause seem to be specifically predicated upon March 28, as the date of injury, it may be that by a most liberal construction they may be interpreted as undertaking to state good cause for not giving the notice and

filing the claim (1) within thirty days and six months, respectively, after December 15, 1929 (if any injury on that date), or (2) good cause for not giving notice and filing claim prior to the time (April 20, 1936) such claim was filed; the right to give notice and file claim on the last-mentioned date (good cause existing) being alone effective to preserve plaintiff's cause of action in any event.

Although continuing his work for the employer right along until March 28, 1936, plaintiff alleges that on March 24, 1936, after being assigned to heavier duties, he consulted doctors who informed him that he had tuberculosis and that it was due to the inhalations of gas as herein set out. That March 24th was the first time that he ever knew, or had reason to believe, that he had tuberculosis, and that it was due to the inhalations of gas occurring at irregular intervals from December 15, 1929, until the fall of 1931. With such information he alleges that he worked on in the same capacity until March 28, 1936, when he consulted an attorney concerning his claim. That it was necessary for the attorney to have some time to look into the law of the case and talk to witnesses "which said attorney did"; that "within a reasonable time thereafter (after March 28) said attorney advised plaintiff (on a date not alleged) to make claim * * * and thereafter (after date of advice, which was not given) acting on the advice of said attorney, plaintiff on April 20, 1936, made and filed * * * claim." That he had always considered the injuries trivial. That such facts show good cause for not filing his claim for injury "within six months after he received same * * *."

Obviously these allegations negative the obtaining of continuous good cause at all times up to the date of April 20, 1936, when the claim was actually filed. In these allegations he fails to allege the facts which, if admitted to be true, would constitute good cause obtaining from December 15, 1929, up to and including April 20, 1936, and the trial court properly sustained the demurrer. Good cause for the first six months delay following the accident is not sufficient under the circumstances. Holloway v. Texas Ind. Ins. Co., Tex.Com.App., 40 S.W.2d 75; Williamson v. Texas Ind. Ins. Co., 127 Tex. 71, 90 S.W.2d 1088; New Amsterdam Cas. Co. v. Scott, Tex.Civ.App., 54 S.W.2d 175;

Texas Ind. Ins. Co. v. Barker, Tex.Civ. App., 82 S.W.2d 389; 45 Tex.Jur. p. 742. Further, any fair analysis of said allegations disclose that there is a break in the plaintiff's continuous good cause. None is alleged for the days intervening from March 24, 1936 (when he learned of the tuberculosis), until March 28 (development of incapacity). In fact, he performed his usual employment during those days. The attorney's advice might have been given March 29, 1936, the 30th, or 31st of that month, or any other ensuing day prior to April 20. In such case there would be no good cause alleged for the time intervening between the date of receiving the attorney's advice and the filing of the claim. This would amount to a failure to show continued good cause to date of filing claim. This would be fatal to his right of recovery. Indemnity Ins. Co. of North America v. McManus, 5 Cir., 88 F. 2d 924; New Amsterdam Cas. Co. v. Chamness, Tex.Civ.App., 63 S.W.2d 1058, writ ref.; authorities supra. During said days, under the plaintiff's own allegations, he was not ignorant of the condition of which the doctors informed him on March 24, 1936.

While it is clear the plaintiff did not rely primarily upon any such theory, we now further consider the appellant's case on the theory that all matters pertaining to good cause, etc., (subd. 2, above), are fairly referable to the time the injury, if any, was received by the plaintiff, while breathing the gas at the irregular intervals alleged. That is, from the viewpoint that the injury or harm to the physical structure of the body took place so far back as some six years prior to the development of the incapacity. In considering the case from this angle it is well to bear in mind the definition of "injury": "The terms 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." Article 8309, § 1, R.S. 1925.

In this respect the plaintiff alleges, in substance, that on December 15, 1929, and at various times thereafter, he inhaled hydrogen sulphide. Other allegations of the petition having to do with the nature and origin of his injuries are as follows:

"* * * inhaled hydrogen sulphide or other noxious or irritating gases from a

pop-off or safety valve situated about 100 feet in a southerly direction from the place where he was working, said gases being blown upon him by a south or southwest wind.

"That during the time he worked at the pressure stills from about December 1, 1929 until the fall of 1931, plaintiff * * * inhaled said gas about 20 or 25 times at irregular intervals of about once a month, said gas being received in the same way as the first inhalation above. That plaintiff is unable to specify the times more specifically. * * * That at the times he received said successive injuries, plaintiff thought same were slight and trivial * * * That at said times he was not disabled from following the duties of his employment, or at most, only temporarily disabled.

"That said disease was not acquired by the plaintiff in the usual and ordinary course of his employment, but was caused by * * * the inhalation of said hydrogen sulphide * * * which were negligently permitted to escape and be blown upon the plaintiff * * *."

"That each and all of the inhalations of said gas caused injury to plaintiff's lungs, as aforesaid, and caused same to be weakened and the natural resistance of same to infection or disease thereby lowered so that the germs of tuberculosis more easily and readily found lodgment therein * * * with which plaintiff learned he was suffering on March 24, 1936, * * *."

He then worked (at different jobs) for said company until along about March 28, 1936, when he ceased work on account of being disabled by pulmonary tuberculosis.

"Plaintiff accidentally inhaled hydrogen sulphide and noxious and poisonous gases on about December 15, 1929, and at various times thereafter as hereinbefore set out, but same did not injure him at said times so as to disable him from following the duties of his employment and he was not thereby prevented from following the duties of his employment until along about March 28, 1936, and he was not injured within the meaning of the term injury as used in article 8307, § 4a, until the disease of tuberculosis naturally resulting from the inhalations of said gas * * * caused said damage or harm to the physical structure of his body."

From the foregoing it is clear that "damage or harm to the physical structure" of plaintiff's body is not alleged as of any particular date, save March 28, 1936. At that time the "damage or harm" is alleged to be merely the sum total of having breathed gas at irregular intervals 20 or 25 times between December 15, 1929, and the fall of 1931. There is not an allegation in the petition that the first, the last, or any other of the inhalations of gas could or did produce the injury in suit, or that anything other than all combined would have wrought the harm to the physical structure of the appellant's body, or did do so. Naturally the date of any such inhalation and resulting injury is not given.

In the definition of "injury," it will be observed that the word "and" is used to link directly "damage or harm to the physical structure of the body" with "such disease and infection as naturally results therefrom." The latter originates in the former. Here, as noted, no allegations specify any date that an inhalation of gas, or any combination thereof, injured or harmed the physical structure of the appellant's body in such a way or manner that disease "naturally resulted therefrom" and the pleading, in fact, refutes or contradicts any such idea. Hence, we conclude that no injury from industrial accident, as contemplated by the Workmen's Compensation Law, is shown by the plaintiff's pleading. It does not contain sufficient averments to admit evidence of every fact essential to support a jugment in favor of the plaintiff.

In Barron v. Texas Emp. Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464, 465, it is said that, "An injury resulting from accident is something which occurs unexpectedly and not in the natural course of events." In the same opinion that court quotes from Amalgamated Sugar Co. v. Industrial Commission, 56 Utah 80, 189 P. 69, as follows: "A distinguishing characteristic of an accidental injury is that it can always be traced to a definite time, place and cause."

Plaintiff's duties required him to control gas pressure, etc., by the manipulation of machinery from the ground. When it was not effective, he did the same by hand from an elevated platform. He commonly performed such duties either way, and he understood that he was to do so. In the event the wind was blowing from the south or southwest direction from the pop-off valve 100 feet away, the result was he inhaled gas. Thus a combination of circum-

stances, none of which did the direct injury to the plaintiff's body, but which were to be expected, caused him to breathe the gas. In this there is no accident. Save the date March 28, 1936, when, as alleged, incapacity developed, no other date of injury is alleged upon which could be predicated notice and filing of claim, or the beginning date, for the 401 weeks' compensation prayed for. Texas Emp. Ins. Ass'n v. Guidry, Tex.Com.App., 99 S.W 2d 900; Jones v. Texas Emp. Ins. Ass'n, Tex.Com.App., 99 S.W.2d 903. The pleading denies that it occurred December 15, 1929, when the gas was first breathed. The injury, if any, reflected by the pleading is one of gradual and almost imperceptible development, attributed to causes extending over a considerable period of time, and which in themselves under the pleading have none of the elements of an industrial accident.

In the disposition of this appeal it is not necessary to determine whether or not the plaintiff suffers from an occupational disease. Our question is: Does the plaintiff's petition reflect an injury resulting from an industrial accident?

There are certain allegations in the petition setting forth grounds of negligence upon the part of the employer in that the gas was not piped further away, or discharged by higher pop-off valve. In brief, the negligence seems to be that safe premises were not provided for the employee, and that such negligence enables the employee to recover as for accident, even though his condition may be the result of an industrial disease. We are unable to grasp the significance of such a proposition in this character of case. As stated, in 45 Tex.Jur. 358, § 4: "An action for the statutory compensation is not founded on tort but on an implied contract; consequently the element of negligence on the part of either the employer or employee, unless it is willful, does not enter into the case except in death claims where the law permits the recovery of exemplary damages on account of gross negligence of the employer. As regards the employee, the plan of compensation provided is more advantageous than a suit for damages."

Further, from Gordon v. Travelers' Ins. Co., Tex.Civ.App., 287 S.W. 911, 912: "Our Workmen's Compensation Act is confined in its 'operation to only accidental injury, and its scope is so limited.' Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556. 'Our statute has never gotten away from the central thought that the injury must be accidental in its nature.' Ætna Life Ins. Co. v. Graham, Tex.Com.App., 284 S.W. 931."

See Travelers' Ins. Co. v. Lancaster, Tex.Civ.App., 71 S.W.2d 318, on rehearing.

The instant case comes within no exception that we are aware of.

For the reasons assigned the judgment of the trial court is affirmed.