## CASUALTY UNDERWRITERS v. FLORES et al.

### No. 10683.

Court of Civil Appeals of Texas. Galveston.

Jan. 12, 1939.

Rehearing Denied Feb. 23, 1939.

Touchstone, Wight, Gormley & Price, of Dallas, and A. Harris, of Bay City, for appellant.

Peden, Johnson & Peden, of Houston, for appellees.

MONTEITH, Chief Justice.

This is an appeal brought by Casualty Underwriters, appellant, to set aside an award of the Industrial Accident Board in favor of Ignacia Flores, Guadalupe Flores and Luz Flores, appellees.

Ignacia Flores answered individually and as next friend of her two minor daughters, Guadalupe and Luz Flores. She alleged that she was the surviving widow of Genaro Flores; that said two minor appellees were the daughters of herself and Genaro Flores; that Genaro Flores died on May 30, 1936, as a result of inhaling poisonous gases in the course of his employment on May 15, 1936; that at the time of his death he was employed by Singer Iron & Steel Company, who were engaged, among other things, in the business of melting lead and who maintained a furnace for that purpose at its place of business in Houston, Texas; that Singer Iron & Steel Company carried a policy of Workmen's Compensation insurance with appellant.

Appellant answered by general demurrer and general denial, and pled particularly that appellee Ignacia Flores was not legally married to Genaro Flores, or that he was

the lawful father of Guadalupe and Luz Flores.

The undisputed evidence showed that for more than five years prior to his death Genaro Flores had been employed by the Singer Iron & Steel Company, where he was exposed to fumes and poisonous gases arising from melted lead; that prior to his last illness he had been treated by his physician for lead poisoning; that on May 15, 1936, while engaged in his duties as an employee of the Singer Iron & Steel Company, and at about the middle of the forenoon, while placing a large quantity of lead in said furnace, which was exceedingly hot and from which poisonous gases and fumes arose, he became ill; that thereafter he was unable to do any work, and that he died from the result of such sickness on May 30, 1936.

The evidence further disclosed that appellant carried a Workmen's Compensation policy, that notice of injury was duly and properly given, claim for compensation made, award made by the Industrial Accident Board, and timely notice of appeal and timely filing of suit, and that Genaro Flores received a weekly wage of $20 during the year preceding his death. The evidence further shows that Ignacia Flores had been married prior to her marriage to Genaro Flores, to whom she was married on December 6, 1933; that her former husband had left her and gone to Mexico some eight or nine years prior to the date of the trial of this cause, and that she had not heard from his since that time, though she had received a letter from her former husband's brother some seven years before the date of the trial stating that her former husband was dead.

The trial in the court below resulted in a verdict and judgment in favor of appellees.

In answer to special issues submitted by the court, the jury found that Genaro Flores inhaled an unusually large quantity of poisonous lead fumes at the plant of the Singer Iron & Steel Company, while engaged in his work on May 15, 1936; that the inhaling of such a large quantity of lead fumes on said date was the producing cause of his death on May 30, 1936; and that an "occupational disease", as defined in the charge, was not the producing cause of his death. The jury further found that the first husband of Ignacia Flores was dead at the time she married Genaro Flores.

The court in his charge defined an "occupational disease" as one acquired in the usual and ordinary course of an employment, which, from common experience, is recognized to be incidental thereto and is the usual and ordinary result incident to the pursuit of an occupation, and must, in the nature of things, be the result of a slow and gradual development.

The court in its judgment found as a fact that suit was filed by appellant within the statutory time; that Genaro Flores died from accidental injuries received in the course of his employment; that Ignacia Flores and Genaro Flores were lawfully married to each other, and that the minor appellees were born of their union, and that Genaro Flores had been employed continuously by the Singer Iron & Steel Company for six years prior to his death, and that his average salary for a year prior to his death had been $20 per week.

Appellant contends, among other things, that an instructed verdict should have been given by the court, for the reason that the testimony failed to show an accidental injury within the meaning of the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., but, on the contrary, showed that the deceased, Genaro Flores, died as the result of an occupational disease, to-wit, lead poisoning; that the court should have submitted an issue to the jury as to whether Genaro Flores suffered an accidental injury, and that since there was no competent testimony to the effect that the first husband of Ignacia Flores was dead, it was error for the court to overrule appellant's motion for an instructed verdict.

It is the contention of appellee that the death of Genaro Flores was the result of accidental injuries received within the scope of his employment; that under the testimony there is a conclusive presumption of law that the prior marriage of Ignacia Flores was dissolved before her marriage to Genaro Flores, and that since the evidence shows that Genaro Flores met his death by reason of his inhaling poisonous fumes on May 15, 1936, it was proper for the court to refuse to submit to the jury an issue as to whether Genaro Flores died from accidental injuries.

The controlling issue in this appeal is whether Genaro Flores died from an occupational disease or whether his death resulted from accidental injuries received within the scope of his employment.

In the case of Barron v. Texas Employers' Ins. Ass'n, 36 S.W.2d 464, in an opinion by our Commission of Appeals, it is held: A disease acquired in the usual and ordinary course of an employment, which from common experience is recognized to be incidental thereto, is an occupational disease and not within the contemplation of the Workmen's Compensation Act, but an injury received from accident is something which occurs unexpectedly and not in the natural course of events. It is one which may possibly be prevented by the exercise of due care and caution on the part of the employer. Snyder on Common Law, p. 419, sec. 293; Gay v. Hocking Coal Co., 184 Iowa 949, 169 N.W. 360; Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464, 466.

"A distinguishing characteristic of an accidental injury is that it can always be traced to a definite time, place, and cause. Amalgamated Sugar Co. v. Industrial Commission, 56 Utah 80, 189 P. 69.

"An occupational disease must be restricted to one that is the usual and ordinary result incident to the pursuit of an occupation and must in the nature of things be the result of a slow and gradual development."

■ Basing our opinion on these rules, we think that there is ample evidence in the record to sustain the findings of the jury to the effect that on May 15, 1936, Genaro Flores, while engaged in the course of his employment, inhaled an unusually large quantity of poisonous lead fumes, which caused his death, and that he died from accidental injuries, and not as a result of an occupational disease.

It is shown by competent evidence that he appeared for work on the morning of May 15th in an apparently normal and healthy condition. His helper, Solomon Ayala, testified that he was working with him on May 15th; that the masks used by the Singer Iron & Steel Company to protect them from the lead fumes were old and would not protect them from said fumes; that at the time Genaro Flores became ill "the fumes came out so bad that he coughed and choked and he said he couldn't stand the fumes any more. 'I am going to take a rest'. He choked and coughed and said he couldn't stand the fumes any longer."

There is testimony to the effect that he became gradually worse after May 15th and died on May 30, 1936. Dr. Angel Leyya testified that he was the family physician of Genaro Flores; that he treated him on several occasions in March, 1936, for lead colic; that he treated him again on May 20, 1936, for acute lead poisoning, and that the cause of his death was acute lead poisoning.

Dr. William Toland testified that a slow process or daily inhalation or absorption of lead fumes would not have caused an acute attack of lead poisoning.

The above testimony shows that at a definite time and place the deceased, Genaro Flores, was subjected to an unusual volume of poisonous lead fumes, which might have been prevented by furnishing to the employees of the company masks which would have protected them from said fumes. Amalgamated Sugar Co. v. Industrial Commission, 52 Utah 80, 189 P. 69, above referred to; Gordon v. Travelers' Ins. Co., Tex.Civ.App., 287 S.W. 911.

In the case of Employers' Liability Assur. Corp. v. Flint et al., Tex.Civ.App., 14 S.W.2d 1046, in an opinion of this court by Chief Justice Pleasants, it is held that the death of an employee by reason of infection or blood poisoning subsequent to burns by chemicals carelessly dropped on his foot was an accidental injury and not an occupational disease. Aetna Life Ins. Co. v. Graham, Tex.Com.App., 284 S.W. 931; Buchanan v. Maryland Casualty Co., 116 Tex. 201, 288 S.W. 116; United States Casualty Co. v. Vance, Tex.Civ.App., 91 S.W.2d 465; Texas Employers' Ins. Ass'n v. Drews, Tex.Civ.App., 297 S.W. 630; Texas Employers' Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S.W. 752.

■ Appellant assigns error in the failure of the court to submit an issue instructing the jury to find whether or not the death of Genaro Flores resulted from an accident. In the case of Associated Indemnity Corporation v. Baker, Tex.Civ.App., 76 S.W.2d 153, 157, a similar contention was made. In this case the court said: "This was not error. It was shown that the injuries received on that day were the result of inhaling poisonous fumes and gases from the condenser. It was further shown that no other employee in the performance of the same duty had suffered any injury prior to that time. A finding that his injuries were the result of inhaling the fumes is tantamount to a finding that they were the result of an accident." Barron v. Texas

Employers' Ins. Ass'n., Tex.Com.App., 36 S.W.2d 464; Travelers' Ins. Co. v. Smith, Tex.Civ.App., 266 S.W. 574.

Appellant contended that the pleadings of appellees are insufficient to justify the submission of the issue as to whether or not Genaro Flores inhaled an unusually large quantity of lead fumes at the time and place in question.

■ Under the Workmen's Compensation Act pleadings are more liberally construed than common-law pleadings. It has been held that if the issue joined requires proof of facts imperfectly stated or even omitted in the petition the defect is cured by the verdict, if the facts established by proof are not challenged by the appellant. This is particularly true where demurrers and exceptions have not been urged to plaintiff's petition. In the instant case, the record does not disclose that any exceptions or demurrers were urged to appellees' pleadings. Bankers Lloyds v. Pollard, Tex. Civ.App., 40 S.W.2d 859; Consolidated Underwriters v. Hubbard, Tex.Civ.App., 107 S.W.2d 908; Southern Surety Co. v. Weaver et al., Tex.Com.App., 273 S.W. 838; New Amsterdam Casualty Co. v. Humphrey, 5 Cir., 47 F.2d 57.

■ Appellant contends that since there was no competent testimony to the effect that the first husband of Ignacia Flores was dead it was error to overrule appellant's motion for an instructed verdict. The testimony shows that the first husband of Ignacia Flores abandoned her seven or eight years prior to the date of the trial; that she had not seen him since that date, but that she had received a letter from the brother of her former husband stating that he was dead. She was married to Genaro Flores on December 6, 1933. The testimony shows that the two minor appellees are the daughters of this union. The rule in this state is laid down in the case of Holman v. Holman, 288 S.W. 413, 414, by our Commission of Appeals, which holds that, "Whenever a marriage is assailed as being invalid on account of a prior marriage having been contracted by one of the parties to the assailed marriage, such prior marriage is presumed to have been dissolved before the second marriage was consummated. Nixon v. [Wichita] Land Co., 84 Tex. 408, 19 S.W. 560; Carroll v. Carroll, 20 Tex. [731], 732; * * * 38 C.J., 1328. This presumption in favor of the validity of the second marriage must pre-

vail, unless rebutted by evidence which negatives the effective operation of every possible means by which a dissolution of such prior marriage could have been effected."

A subsequent reported appeal of the case of Holman v. Holman is found in Tex.Civ. App., 294 S.W. page 601.

For the reasons above stated, the judgment of the trial court will be in all things affirmed.

Affirmed.