## FEDERAL UNDERWRITERS EXCHANGE v. HIGHTOWER.

### No. 14098.

Court of Civil Appeals of Texas. Fort Worth.

June 7, 1940.

Rehearing Denied Sept. 13, 1940.

Lightfoot, Robertson, Gano & Johnston, of Fort Worth, for appellant.

Houtchens & Houtchens and J. Harold Craik, all of Fort Worth, for appellee.

SPEER, Justice.

This is a workmen's compensation case. Plaintiff Bill Hightower is the employee, defendant Federal Underwriters Exchange is the insurance carrier, and Bluebonnett Packing Company of Fort Worth, the employer. The parties will carry the same designation here as in the trial court.

Plaintiff instituted this suit in a district court of Tarrant County, to set aside an award of the Industrial Accident Board and to recover compensation for an accidental injury alleged to have been sustained while in the course of his employment with the above named Packing Company. Primarily, he sought to recover compensation for total and permanent disabilities, and alternatively for each and all of the lesser degrees of disability, i.e., partial, permanent and temporary. Competent allegations were made for recovery of lump sum judgment. Defendant answered

with general demurrer, special exceptions and general denial.

The case was tried to a jury on special issues. Preliminary to submission of special issues, the court, in his charge, defined all necessary words, terms and phrases to be used in connection with the issues to be submitted, and no complaint is here made of any except paragraph 3, in which a definition was given of "Injuries received in course of employment." That paragraph reads: "By the term Injuries Received in the Course of Employment, as used in this charge, means injuries of every kind and character having to do with and originating in the work, business or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, and such injury as had to do with, and arises out of the work or business of the employer when such injury results from a risk or hazard which is necessarily or ordinarily inherent in or incident to the conduct of such work or business."

Insofar as it is necessary to state, the verdict was:

1. Plaintiff sustained an injury to the middle finger of his left hand on or about August 15, 1938.

2. The injury was accidental, as that term was defined in the charge.

3. It was received while in the course of his employment by the named Packing Company.

4. Plaintiff became afflicted with undulant fever on about August 15, 1938.

4a. The affliction was the natural result of the injury sustained by plaintiff to his middle finger on about August 15, 1938.

5. Plaintiff has been totally incapacitated, as a natural result of the injury sustained.

6. The total incapacity began on August 15, 1938.

7. That his total incapacity was permanent.

8. Conditionally submitted but asked the jury to fix the number of weeks to the present (date of trial, June 29, 1939) that plaintiff had suffered total incapacity to work. (Not answered.)

9. Plaintiff will suffer total incapacity in the future as a natural result of the injuries sustained.

10. He will, in the future, suffer total incapacity for 400 weeks as a natural result of the injuries sustained on August 15, 1938.

Without qualification or reference to any previous answer, Special Issue No. 11 and its answer read: "Do you find from a preponderance of the evidence that the plaintiff, Bill Hightower, has suffered partial incapacity for work (as that term has been defined for you in paragraph 5 above) as a natural result of the injury, if any, sustained by him on or about August 15th, 1938?" Answer: "No."

Special Issues 12, 13, 14, 15, 16, and 17 were submitted to be answered only upon condition that the jury had answered Issue 11, that there had been a partial disability to plaintiff. The several inquiries sought to ascertain that in the event there was a partial disability, (a) when did it begin, (b) was it permanent, (c) if not permanent, to fix the number of weeks since it began to the date of trial, and (d) if the partial incapacity was not permanent, to fix the number of weeks plaintiff's partial incapacity would continue in the future. Special Issue No. 11 was answered that there was no partial incapacity, and Issues 12 to 17, both inclusive, were not answered.

20. Plaintiff's average weekly wage for the preceding year was $15.

21 and 22. Manifest hardship and injustice will result to plaintiff if his compensation is not paid in a lump sum.

23. The cow which plaintiff skinned on or about August 15, 1938, was infected with Bang's disease.

In response to other special issues disclosed by the record to have been requested by defendant, it was found that, (a) plaintiff was not fully recovered on October 1, 1938, (b) plaintiff's total incapacity was not a result of a cut on his thumb at a date previous to August 15, 1938, (c) any partial incapacity was not produced by a cut on plaintiff's thumb about three weeks before August 15, 1938, (d) the total incapacity of plaintiff was not produced by some cut on his hand other than the one claimed to have been received on August 15, 1938, (e) any partial incapacity of plaintiff since August 15, 1938, was not caused by a cut on his hand other than the one on the last date mentioned, (f) plaintiff did not contract undulant fever solely from drinking milk, (g) the undulant fever contracted by plaintiff was not caused by coming in contact with diseased cows other than the one on the occasion when he cut his middle finger. Special Issue No. 18 requested by defend-

ant, the explanation requested and given with it and the answer, were:

"Do you find from a preponderance of the evidence that the incapacity, if any, suffered by plaintiff since August 15th, 1938, is not the result of occupational disease?" Answer: "Yes."

"In connection with the above issue, you are instructed that the term 'occupational disease' means a disease contracted by a slow and gradual process in the ordinary course of employment and because thereof, and reasonably to be anticipated as a result of the work, and which, from the common experience of mankind, is known to be incidental thereto."

Other answers to issues found that undulant fever contracted by plaintiff was not caused by coming in contact with germs at any time other than on August 15, 1938, not related to the occasion of cutting his finger, and that he would not have contracted the fever but for the cut on his finger on that date.

Judgment was entered for plaintiff on the verdict in a lump sum for $2,858.73, prorated two-thirds to him and one-third to his attorneys. Motion for new trial was overruled and this appeal perfected.

Appellant's fifty-two assignments of error are briefed under ten propositions. The first five of which propositions are said to be germane to assignments of error 1 to 23, and are briefed by appellant in a group, since, as stated in the brief, "They all relate to and raise the question of sufficiency of the evidence to support the several findings of the jury on the question of when, how and where he (plaintiff) contracted undulant fever." It is also claimed that a verdict should have been directed for defendant.

The evidence in this case is that given by plaintiff and witnesses offered by him; defendant offered no testimony, other than to cross-examine plaintiff and his witnesses.

The plaintiff testified that he cut his finger while skinning a cow for his employer, a few days before he was stricken with fever, on August 15, 1938. That he called his foreman's attention to the cut and then went and had the finger dressed with a disinfectant, that it bled freely; he then returned and finished skinning the animal. The exact date on which his finger was cut is not definitely stated. In one place he said it was a few days before the 15th; in another, he said he had cut his finger four days or more possibly, before the 15th, when he had to quit on account of his illness; again he testified: "I told him (the foreman) about it (cutting the finger) the same day. The rest of the day, my finger was bound up but I continued to work. I continued to work about four or five or six days before I had to give up, and had to go home." On cross-examination he said: "I don't believe I remember the date I cut my finger but it was two or three days before I was taken sick. I went home on a Monday, I believe on the 15th, and this happened on Friday or Saturday. Then on Monday I was taken sick with a fever. I don't believe it was over three days after I had this cut until I took sick with fever. It must have been three or four days, I wouldn't say positive."

It is disclosed by the evidence that the type of business carried on by the employer, among other things, was to buy carcasses of animals, skin them and convert various parts into commercial products. Plaintiff testified that the four or five year old Jersey cow which he skinned, after cutting his finger, was dead when brought to the plant; her udder was badly swollen, and that the animal had the appearance of having lost a calf. That in doing his work he necessarily had to split the skin across the udder and got the contents onto his hands.

A veterinarian testified that some cattle have a fever known as Bang's disease. The effect of that disease is to cause abortion among the females so afflicted; the disease and its results often produce death. The witness further testified that it was a recognized fact that persons drinking unpasteurized milk from cows or goats afflicted with the disease will contract the fever; it is a germ disease and the germ gets into the animal's blood stream and the milk; a person who contacts these germs may take the fever; the germ may get into the body through a cut or wound; that no one knows how long after a person has been exposed to these germs before it shows up on him. Witness said he did not pretend to be an expert on diseases of the human body, but that his experience was confined to diseases of animals and those that may be transmitted from animals to persons.

Dr. Swift testified, in effect, that he treated plaintiff for several months, beginning with September 5, 1938; he understood that previously Dr. Greines had

treated plaintiff at a hospital until about August 27th; that on September 5th, plaintiff became very sick; Dr. Greines was out of town and witness took plaintiff to the hospital, where he treated him for some months. The first tests made for undulant or Malta fever by the witness were negative, but within a day or two other tests made were very positive; it was explained that acute stages would not always be revealed upon test. That it is only when the disease becomes chronic that it is readily demonstrated; during treatment by Dr. Greines and before witness began, tests were negative. Based upon a hypothetical question involving the cut on plaintiff's hand and his acts of skinning a cow and developing pains in his arm and side, followed by fever within three or four days, witness said plaintiff would run every chance in the world of developing an infection, if the cow was infected. He said the disease could be contracted in many ways, the most common of which were exposures to infected animals, and drinking infected milk. He said the disease was caused by a germ and was not ordinarily the result of an external injury. That the incubation period for undulant fever is anywhere from five days to a month, depending upon a great many things; the witness never knew of a case developing in less than five days from date of infection; that plaintiff was not well at the time of trial, and witness could not say when he would be; that the disease was very difficult to control; it could be arrested but unless all germs were destroyed the fever would likely return; plaintiff's trouble may last for six months or for years. Dr. Phillips, a partner in the Clinic with Dr. Swift, testified to substantially the same as that above mentioned.

■ The testimony is far from being conclusive, but we are not ready to say, with appellant, that there was no testimony to support the material jury findings, viz.: (a) That the cow skinned by plaintiff on August 15, 1938, was infected with Bang's disease; (b) that plaintiff became infected with the disease as a result of coming in contact with the germs while skinning the cow; and (c) that he did not contract the disease from any of the other sources shown. Often it becomes necessary to prove that facts exist by showing circumstances which lead to a conclusion with reasonable certainty, that the ultimate fact sought to be proved, does exist. The veter-inarian explained the symptoms of the disease in animals so infected; it seems that this cow had the appearance of having been infected; the doctors said plaintiff would have every chance to contract the disease, if he had the cut finger and skinned an infected cow. Plaintiff unquestionably had the cut finger, skinned the cow and took down with fever within a few days, perhaps three, four or more days; about two weeks later it was diagnosed as undulant or Malta fever. It is insisted by defendant that because the doctors testified that in their opinion undulant fever would not develop in less than five days after exposure to the germ, there was no evidence to support the jury finding that plaintiff contracted it in the manner and at the time claimed by him. We do not agree with this contention. The circumstances in the evidence to which we have referred were sufficient to make it a jury question. The well known general rule governing circumstantial evidence is laid down in 17 Tex. Jur., sect. 409, p. 908, and Ibid., sect. 410, p. 910. Under the rule there announced, we think there was evidence, of a substantial nature, to support the verdict, and that it would have been error for the court to instruct a verdict for defendant. The group of propositions under discussion are therefore overruled.

Other propositions to be considered involve procedural questions which arose upon the trial. We will proceed to notice them in the order presented. The sixth proposition is germane to assignments of error 24 to 32, both inclusive. It complains of the definition given by the court of what is meant by the term, "Injuries sustained in the course of employment", as above quoted. It is contended that so much of the explanation as is taken from the statutory provision (Article 8309, R.C.S., second subsection 4 of Section 1) was properly given, but that the remainder of the charge, beginning with the words, "and such injury as has to do with and arises out of * * *", and so on, was reversible error, because it (a) was prejudicial to defendant's rights, in that it was an erroneous statement of the law applicable to the case, (b) the definition as given encompassed the elements of an occupational disease, shown by the evidence, for which no compensation can be allowed, and (c) was calculated to and did lead the jury to believe that injuries resulting from an occupational disease were compensable.

■ There is no merit in the proposition based on the reasons urged. The part of the definition complained of is not an incorrect statement of the law, as given by a construction of the statute by our Supreme Court. Lumbermen's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; Federal Surety Co. v. Ragle, Tex.Com.App., 40 S.W.2d 63, and Erwin v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 63 S.W.2d 1076, 1078, writ of error refused. These, and many more cases of like kind, are collated in 45 Tex. Jur., sect. 75, p. 464. The part of the charge complained of in the instant case is substantially the language used by the courts in the above cited authorities.

■ The charge does not. embrace any more of the elements of "occupational disease" than were necessary to define "Injuries sustained in course of employment". As above pointed out, it will be observed that in the language requested by defendant, the issue of whether or not plaintiff was suffering from an occupational disease was submitted to the jury. In the definition of "occupational disease", as requested by defendant (to which it cannot now object), that disease is said to be one "contracted by a slow gradual process in the ordinary course of employment", and further embraces its foreseeableness. It is well settled that disability resulting from occupational disease is not compensable under our laws. A definition of that type of disease is found in the case of Barron v. Texas Employers' Ins. Ass'n, Tex.Com. App., 36 S.W.2d 464, 466. In that case it is said:

"A distinguishing characteristic of an accidental injury [from that of occupational disease] is that it can always be traced to a definite time, place, and cause. Amalgamated Sugar Co. v. Industrial Commission, 56 Utah 80, 189 P. 69.

"An occupational disease must be restricted to one that is the usual and ordinary result incident to the pursuit of an occupation and must in the nature of things be the result of a slow and gradual development."

In the instant case, plaintiff's injury was traceable to a definite time and place; it may be perceived that from the nature of the employer's business other infected animals would be brought there, but the evidence does not reveal that it was ever done; no other person is shown to have ever previously contracted Malta fever at the employer's place of business; it does not appear affirmatively from the record that plaintiff's affliction was one known to be incidental to his particular type of employment. The proposition cannot be sustained, and must be overruled.

Seventh and eighth propositions complain of the manner in which the degrees of incapacity to labor were submitted, and because a lump sum judgment was entered. In response to Special Issue 5, it was found that plaintiff's incapacity was total, and in answer to No. 7, the incapacity was found to be permanent. Special Issue No. 8 was submitted and to be answered only in the event the jury had answered No. 7 in the negative; that issue having been answered in the affirmative, No. 8 was not answered. The unanswered issue sought to elicit the number of weeks plaintiff had been totally incapacitated up to the date of trial. Special Issue No. 9 was conditionally submitted; that is, if the jury had answered No. 7 in the affirmative (that plaintiff's incapacity was permanent) they need not answer, but to be answered if answered negatively. Notwithstanding the conditional submission and the fact that No. 7 was answered affirmatively, the jury answered No. 9 finding that plaintiff would, in the future, suffer total incapacity. Special Issue No. 10 was conditional, to be answered only if the jury had answered No. 9 affirmatively, as it did. By Issue 10 and its answer, it was found that plaintiff would suffer total disability in the future for 400 weeks.

■ Defendant's plea of general denial put in issue all phases of plaintiff's cause of action. These consisted of total permanent, temporary total, temporary and permanent partial disability. Defendant was entitled to have each and all of these elements, upon which evidence was introduced, affirmatively and unconditionally submitted. Texas Indemnity Ins. Co. v. Thibodeaux, 129 Tex. 655, 106 S.W.2d 268; Wright v. Traders & Gen. Ins. Co., 132 Tex. 172, 123 S.W.2d 314; Southern Underwriters v. Wheeler, 132 Tex. 350, 123 S. W.2d 340; Texas Fire & Casualty Underwriters v. Watson, Tex.Civ.App., 126 S.W. 2d 496, writ refused; Traders & Gen. Ins. Co. v. Lincecum, Tex.Civ.App., 126 S.W.2d 692; Commercial Standard Ins. Co. v. Davis, Tex.Civ.App., 135 S.W.2d 794, writ dismissed, judgment correct, 134 Tex. 487, 137 S.W.2d 1.

■ Complaint is made that nowhere did the court submit affirmatively and unconditionally whether or not plaintiff's total incapacity was temporary. There was evidence to raise that issue and the court erred in not unconditionally submitting that issue to the jury. This error was not cured by the unconditional submission of Special Issue No. 11, above quoted; that inquiry went alone to the question of partial incapacity. Nor does Special Issue No. 10 and its answer, to the effect that plaintiff would be totally disabled for 400 weeks in the future, remove the deficiency.

■ Reverting to the eighth proposition, which complains of the entry of a lump sum settlement, we have concluded that there was reversible error committed when that decree was entered. Such a judgment can only be entered in cases where death or total permanent incapacity is shown to have resulted from the injury. Article 8306, Section 15, R.C.S.

We must take cognizance of the verdict upon which the judgment was entered. There were findings of total and permanent disability, but by Special Issue No. 10 it was found that the total permanent disability would last 400 weeks. We must concede that these findings are contradictory one of the other. A finding that total disability will last 400 weeks is not tantamount to a finding of total permanent disability. Texas Employers Ins. Ass'n v. Shilling, Tex.Civ.App., 259 S.W. 236. In view of the fact that the answer to Special Issue 10 found that plaintiff's total disabilities would last 400 weeks in the future (from the date of trial) and the fact that about 42 weeks had already passed since the date of his disability began, we perhaps would be warranted in reversing the judgment of the trial court entering a lump sum settlement and affirming the remainder, requiring weekly compensation during the period of disability, if that was the only error in the record. But because the case must be reversed and remanded for other reasons pointed out, and to avoid a possible conflict in our holdings here and that announced in the Shilling case, supra, we reverse and remand because of error shown in both the seventh and eighth propositions, and the assignments to which they relate.

■ We overrule the ninth proposition, wherein it is claimed that there was error committed by the court in submitting the ancillary and supplemental issues embraced in Special Issues 12 to 17, submitted conditioned upon the nature of the answer given to No. 11. That issue inquired whether or not plaintiff sustained a partial disability, and was answered that he did not. The jury having found that there was no partial disability, it became immaterial as to when it began or whether it was temporary or permanent, either prior to the trial or would be such in the future. Traders & Gen. Ins. Co. v. Huntsman, Tex. Civ.App., 125 S.W.2d 431, 439, writ dismissed, judgment correct.

The tenth proposition asserts that since undulant fever is curable, and that being the only affliction relied upon by plaintiff to show that his disability is total and permanent, no judgment should have been rendered awarding him compensation for total and permanent disability and a lump sum settlement. The evidence is very meager on the point as to how long it will last or whether it is such a disease as could likely be cured. But what we have said requiring the reversal of the judgment renders it unnecessary to pass upon the point raised.

This opinion perhaps has already been unnecessarily extended, but what we have said is with a view to be of assistance to the court upon another trial.

■ In view of the recent decisions of our Supreme Court, cited above, requiring all ultimate issues upon which the plaintiff's case rests or either of the defenses raised by the pleadings and evidence, it is imperative that trial courts should submit them affirmatively and unconditionally. If a conflict in the verdict is thus brought about, the court should endeavor to have the jury eliminate it in the manner so often prescribed by our appellate courts, and if this cannot be done, a new trial should be granted, and thus avoid the expense and delay of appeals.

For the reasons assigned, the judgment of the trial court is reversed and the cause is remanded for another trial.