## PETROLEUM CASUALTY CO. v. WILLIAMS. (No. 1192—5196.)

Commission of Appeals of Texas, Section A. March 27, 1929.

K. W. Gilmore, John C. Townes, Jr., and Conrad J. Landram, all of Houston, for plaintiff in error.

Hunt, Teagle & Moseley and C. A. Teagle, all of Houston, for defendant in error.

CRITZ, J. Clifford E. Williams, an employé of Humble Oil & Refining Company, was on January 12, 1927, the husband of Ruby May Williams, and on said date received injuries in the course of his employment with said company from which he died. Within the time required by law the wife of deceased gave notice of injury to the oil company and to Petroleum Casualty Company, and within six months after said injury filed \claim for compensation with the Industrial Accident Board of this state. Thereafter, on June 7, 1927, said board made an award in favor of said surviving wife, Ruby May Williams, for the sum of $20 per week, for a period of 360 weeks, said sum being the maximum amount allowed by law. Said award was based on the total earnings of deceased during the preceding year. The Humble Oil & Refining Company carried compensation insurance with Petroleum Casualty Company covering its employés.

From the award of the Industrial Accident Board, the casualty company appealed to the district court of liberty county, the county in which the injury occurred, asking that said award be annulled and set aside. The case was tried before the court without a jury, and the trial court set aside the award of the Accident Board and rendered judgment for said surviving wife, Ruby May Williams, for the sum of $15.58 for and during the full period allowed by law, 360 weeks. The case was duly appealed by Ruby May Williams to the Court of Civil Appeals for the Ninth District, at Beaumont, which court reversed the judgment of the district court and rendered judgment for said surviving wife for ¡the sum of $20 per week for the full period of 360 weeks, being the same amount allowed ·by the Board. 4 S.W.(2d) 631. The case is now before this court on ·writ of error granted on application of Petroleum Casualty Company, the insurer.

The one and only question involved in this appeal is the amount of compensation due. The case was tried in the district court on an agreed statement of facts, and no other testimony was heard. Attached to the agreed statement of facts is the employment or service record of the deceased, which shows that on January 12, 1927, the date of injury which resulted in death, the deceased was working under the classification of "helper," and had been working under such classification continuously since October 1, 1926, or about 3 months and 12 days, and as such helper was drawing wages of $4.50 per day. Said employment record further shows that during the 12 months preceding the injury the deceased had worked 229.3 days as "helper," which includes 7 days' vacation "on basis as helper"; 22.3 days as "derrickman," at $5 per day; 10 days as "gang pusher," at $165 per month; 100 days as "gang pusher" at $180 per month; and 2 days as "pumper," at $5 per day. The above classes of labor, or employment, were intermingled and interspersed throughout the year. It will thus be seen that, according to the agreed employment, or service record, the deceased had worked during the preceding 12 months 363.6 days for the same employer at various classes of employments.

In order to arrive at the compensation to be allowed in this case it is necessary to apply the above agreed employment record to the statute, and especially• to the subdivisions 1, 2, and 3 of section 1 of article 8309, R. C. S. of Texas 1925. Said subdivisions are as follows:

1. "If the injured employé shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employé shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employé of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed.

"3. When by reason of the shortness of the time of the employment of the employé, or other employé engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

Before applying the provisions of the statute to the service record of the deceased it is necessary for us to construe the statute

and to ascertain what is meant by a *year*, and also what is meant by the word *substantially* as used in subdivisions 1 and 2.

Both subdivisions 1 and 2 provide that the average annual wages shall consist of 300 times the average daily wages. Also, subdivision 5 of section 1 of the same article provides: "The average weekly wages of an employé shall be one fifty-second part of the average annual wages." It is thus made clear to us that, as defined by the law itself, when an employé has worked as much as 300 days during the 12 months immediately preceding the injury he has worked a year of labor within the meaning of the statute. In our opinion it would be placing an erroneous and unjust construction upon the statute to hold that under its provisions an employé must work 365 days in order to work a year, and at the same time compute his average annual wages by multiplying his actual average daily wages by only 300. A statute should not be given a construction that leads to an absurdity or thwarts the plain purposes of the Legislature. Trimmier v. Carlton, 116 Tex. 572, 296 S. W. 1070. This construction is further fortified by the fact that it is known of all men, and judicially known by this court, that as a general rule labor does not work on the Sabbath except where engaged in those occupations in which necessity compels them to do so. After we deduct 52 Sundays from the 365 days, barring leap year, we have left but 313 working days. Under article 4591, R. C. S. 1925, there are 11 legal holidays that are generally observed by our citizens in all walks of life. Thus it will be seen that the Legislature has seen fit to define 300 days as a year of labor for the average laborer.

We are further of the opinion that *substantially a year*, within the meaning of subdivisions 1 and 2, is exactly 300 days or close to, or near to 300 days. It may be slightly more than 300 days or slightly less than 300 days. That is to say *substantially a year* means a year or about a year, or so near a year as to be a year for all practical purposes. A reading of the three subdivisions together, and a viewing of same in the light of the entire act, will show any other construction will lead to confusion. Further, it would be doing violence to the express purpose of the act to give the word *substantial* an absolute literal meaning or definition, as to do so would lead to a holding that the Legislature provided a measure of compensation under subdivision 1 for about or nearly a year, or close to a year, but failed to do so for exactly a year, and further, such a construction would .lead to the conclusion that the act nowhere provides a measure of compensation for exactly a year, except under the general provisions of subdivision 3. To our minds it is plain that the Legislature intended to measure compensation for

exactly a year, and substantially a year, on the same basis.

The above interpretation violates no rule of statutory construction, but it is in harmony with precedent. It is not a true line of construction, in interpreting a statute, to always decide according to the strict letter of the act, but it is the duty of the court to ascertain what is its fair meaning, and the court will expound the statute differently from the letter in order to preserve the intent, for the intent of the Legislature is the law although not in strict accord with the strict letter. Forshey v. Galveston, H & H. Ry. Co., 16 Tex. 516; Edwards v. Morton, 92 Tex. 152, 46 S. W. 792; Winder v. King (Tex. Com. App.) 1 S.W.(2d) 587.

Subdivision 2 of the act provides that "if the injured employé shall not have worked in *such employment* during substantially the whole of the year" immediately preceding the injury, etc. *Such employment* here means the employment referred to in subdivision 1, and has reference to the employment in which the employé is working at the time of injury. The phrase *such employment*, as used in this subdivision, has meaning to refer back to something, and could only refer back to subdivision 1. Also if *such employment* as used in subdivision 2 refers back to subdivision 1 and means the employment at the time of injury, then all of subdivision 2 has reference to the same thing, and "the same or in a similar employment," as used in the latter part of subdivision 2, also means the same or in a similar employment as that engaged in at the time of injury. Giving subdivision 2 this interpretation or construction, it will read as follows: "If the injured employé shall not have worked in the employment in which he was working at the time of the injury during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employé of the same class working substantially the whole of such immediately preceding year, in the same employment at which the injured employé was working at the time of injury, or in a similar employment, in the same or in a neighboring place, shall have earned in such employment during the days when so employed."

Also in construing subdivision 3 of the act we should do so in the light of subdivisions 1 and 2. It was the intention of the Legislature that compensation should be as nearly just and uniform as justice and the facts of the case will permit. Therefore, in measuring the compensation to be awarded under subdivision 3, the two preceding subdivisions should be looked to, to the end that the entire meaning and general purposes of the act may be ascertained and justly and uniformly carried out.

Now, let us examine the agreed employment

or service record of the deceased, in the light of the statute as we have construed and interpreted the same:

It requires no extended discussion or investigation to demonstrate that the compensation in this case cannot be measured by subdivision 1, for the reason that deceased did not work at the same employment at which he was working at the time of injury for substantially the whole of the year immediately preceding the injury. We therefore hold that the compensation in this case cannot be measured by subdivision 1. It follows that if the compensation in this case cannot be measured by subdivision 1, that it must be measured by subdivision 2, unless by reason of the shortness of the time or other good and sufficient reasons it is impractical to compute the average weekly wages under said subdivision 2.

We are of the opinion that compensation in this case cannot be measured by subdivision 2 for the following reasons: Since 300 days is a year of labor within the meaning of the law as applied to this case, and since the agreed employment record of the deceased shows that he worked 363.6 days, or 63.6 days more than a year of labor, and since said service record shows that deceased was engaged in an employment that worked on Sundays, and since said record shows that deceased was a man capable of performing various classes of labor for his employer, and since said record shows that the classes of labor performed by deceased were varied, and intermingled and interspersed throughout the year, at wages ranging from $4.50 per day, when working as a "helper," to $6 per day when working as a "gang pusher," and since there is nothing in the record to show that the class of employment engaged in at the time of injury was a permanent employment, it would be manifestly unjust and unfair, and therefore impractical, within the meaning of subdivision 3, to apply subdivision 2, and therefore subdivision 3 will have to be applied.

■■ At this point we will further say that if the facts of the case at bar showed a reasonably permanent employment of the deceased at the time of injury in the class of employment at which he was then working, we would be inclined to compute the average annual wages on the basis of the wages of deceased at the time of injury; but we do not believe that the agreed employment record of deceased would justify us in doing so in this case. Of course where the employment record shows that the injured employé has been permanently promoted at a higher wage, and at the time of injury is working at such permanently higher wage, it would be right and proper in such a case to compute the average annual wages for the purposes of allowing compensation on the basis of the wages received at the time of injury. Conversely, the same rule would apply where the employé has been permanently demoted at lower wages. This construction of the statute is in harmony with logic and sound economic principles, and such may be looked to in construing the intent and purpose of the statute, where it aids the court in doing so.

■ The service record of the deceased shows that he worked for the same employer for 363.6 days during the 12 months next preceding the date of injury, and that he earned $1,791.64 for such labor, or an actual average weekly wage of more than $34 per week. 60 per centum of this amount is more than $20 per week, the maximum amount of compensation allowed under the statute. It follows that $20 per week for the full period of 360 weeks should be allowed in this case.

In view of what we have said, we deem it expedient to discuss the case of Howard et al. v. Texas Employers' Ins. Ass'n (Tex. Com. App.) 292 S. W. 529. In the Howard Case the facts as disclosed by the opinion show that Howard worked for the Texas Company and received fatal injuries in the course of his employment. It is also shown that Howard worked for more than twelve months next preceding the date of the injury for seven days in the week, including a two-week's vacation at full pay, for which he received a daily wage of $4.60 per day, and had put in overtime for which he had received $39.39. It was further shown that 60 per centum of the actual average weekly wages actually received amounted to slightly more than $19.08. Under this state of facts, this section of the commission held that compensation could not be computed under either subdivision 1 or 2, and applied subdivision 3. Certainly, where the injured employé has worked 65 days more than a year, plus $39.39 of overtime during the preceding 12 months, he has worked substantially more than a year of labor, and his compensation could not be measured by subdivision 1, and, further, in such a case it would be unjust and impracticable to measure the compensation under subdivision 2, for good and sufficient reasons shown by the employment record itself. The correct judgment was undoubtedly recommended and entered in the Howard Case. The writer and Judge Harvey agree, in the main, with the opinion in the Howard Case, but we do not agree with that part of the opinion which holds that substantially the whole of the year, as used in subdivisions 1 and 2, always means less than a year, but our views on this question are as hereinabove indicated. Judge Nickels still adheres to the view expressed in the Howard Case, but concurs in the disposition of this case.

Since the judgment of the Court of Civil Appeals allows compensation at the rate of $20 per week, the full amount provided under

the statute, we recommend that the judgment of that court be affirmed, for the reasons stated in this opinion.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.