**BARRON v. TEXAS EMPLOYERS' INS. ASS'N.**

**No. 1228—5598.**

Commission of Appeals of Texas, Section B.
March 18, 1931.

Templeton & Templeton, of Fort Worth, and Paul Moss, of Odessa, for plaintiff in error.

Leachman & Gardere and R. T. Bailey, all of Dallas, for defendant in error.

LEDDY, J.

Plaintiff in error was employed by the Atlantic Production Company upon an oil lease situated in the Crane county oil field. It appears that the gas emitted from the producing wells on this lease was of a poisonous nature, and that during the few months in which he had worked thereon his eyes had several times become inflamed, and on one occasion he had been almost knocked out when gauging an oil tank from the fumes arising from this oil. However, he fully recovered from this attack; and upon the occasion of the injury, for which compensation is now claimed, he was engaged in lowering tubing into an oil well. At the beginning of his work only a small amount of gas was coming from the well, but as the tubing came in contact with the oil the agitation caused the well to make heads of oil and gas, the gas being discharged in an unusually heavy volume. On account of the fact that plaintiff in error was operating the machinery controlling the lowering of the pipe, he was unable to escape inhaling the gas by temporarily abandoning his work, as it seems other employees did. If he had abandoned the machinery which he was operating, the tubing would have dropped into the well. On this account he was compelled to inhale large quantities of the heavy discharges of gas during his work on the 9th and 10th of March, 1928, with the result that he sustained severe, heavy, and unusual gassing during those days. As a result thereof he became weak and nauseated, his nasal passages and eyes being highly inflamed, and he suffered pains in his lungs. On account of his physical condition resulting from this gassing he quit his work at 3:30 p. m. on March 10th, was placed in a truck, carried to a camp, and put in bed. He attempted to work the day following, but his condition gradually grew worse, active tuberculosis later setting up, resulting in a hemorrhage some three weeks after the accident.

By medical testimony it was shown that inhaling the poisonous gas from the wells in the Crane county field causes an irritation of the mucuous membrane and lungs and weakens the system so as to bring about tuberculosis where such germ happens to be present at the time of the injury, or during the period in which the inflamed condition of the lungs continues. While the inhalation of the gas itself does not cause tuberculosis, it weakens the victim to such an extent that he is peculiarly susceptible to the development of such disease where the germ is present.

On appeal from an award of the Industrial Accident Board, the case was submitted to a jury in the district court upon special issues, all of which were found favorably to plaintiff in error, it being determined by the answers to such issues that the injury sustained by him was not the result of his inhaling hydrogen sulphide gas in small quantities over a period of months, but that such injury, which was total and permanent, resulted from inhaling said gas in unusually heavy quantities on the 9th and 10th of March, 1928.

Defendant in error insists that its peremptory instruction should have been given by the trial court because it was conclusively shown that plaintiff in error's condition was due to an occupational disease, as contradistinguished from an "accidental damage or harm to the physical structure of his body and such disease or infection as naturally result therefrom," while plaintiff in error insists it was properly determined by the court under the findings of the jury that he sustained an accidental injury within the purview of the Workmen's Compensation Law.

A disease acquired in the usual and ordinary course of an employment, which from common experience is recognized to be incidental thereto, is an occupational disease and not within the contemplation of the Workmen's Compensation Act, but an injury resulting from accident is something which occurs unexpectedly and not in the natural course of events. It is one which may possibly be prevented by the exercise of due care and caution upon the part of the employer. Schneider on Compensation Laws, p. 419, § 223; Gay v. Hocking Coal Co., 184 Iowa, 949, 169 N. W. 360.

A distinguishing characteristic of an accidental injury is that it can always be traced to a definite time, place, and cause. Amalgamated Sugar Co. v. Industrial Commission, 56 Utah, 80, 189 P. 69.

An occupational disease must be restricted to one that is the usual and ordinary result incident to the pursuit of an occupation and must in the nature of things be the result of a slow and gradual development.

■ Tested by these rules, we think it fairly appears that the condition of plaintiff in error was due to an accidental injury and not to an occupational disease. This is true for two reasons: First, because it appears that the volume of gas which came from the well at the time he sustained his injury was an unusually heavy one; and the serious consequences which resulted from inhaling such gas can be traced definitely to this particular gassing, and not to the slow and gradual process of inhaling the same during the time he had been in the employment of the Atlantic Production Company. While it is true he had prior to the occasion in question inhaled this gas to some extent, yet it was diluted with a mixture of air and not in a heavy volume; while on the occasion of his injury, heavy escapes of the gas caused him to inhale an unusual amount thereof, which is shown to have resulted in positive injury to the physical structure of his body, that is, to his nasal passages, throat, and lungs. Second, because it appears that plaintiff in error's employer could have prevented the escape of such a heavy volume of this poisonous gas by the exercise of proper care and caution. Plaintiff in error testified, without dispute, that the escape of such a large quantity of the gas could have been prevented. On this subject he said: "As to how that could be prevented, will say you could use an oil saver. An oil saver fits around the pipe and has rubber on that side of it and you can adjust it so that the pipe just has room to slip by there, and I never saw one that did not make just a little gas, but it will keep it from making a head right in your face. This well was making heads right at the time I was telling you about."

If an employer fails in his duty to furnish a safe place to work, and an employee is injured, the liability of such employer cannot be avoided by calling such injury an occupational disease. Schneider on Workmen's Compensation Laws, § 223.

■ An employer will only be permitted to avail himself of the defense that his employee's injury resulted from an occupational disease when he has used due diligence to prevent the employee from being subjected to hazards calculated to injure while engaged in his service. The law recognizes that there are some occupations fraught with inherent dangers, even though the employer has used proper care and diligence to safeguard and protect those employed by him. Where the requisite degree of care has been used by the employer, and the employee is injured by a gradual and slow process resulting from hazards necessarily incident to the performance of his duty, then the injury is treated as an occupational disease.

In the case of Amalgamated Sugar Co. v. Industrial Commission, cited above, it was held that the dependents of an employee whose death resulted from inhaling carbon monoxide gas while working in a limekiln factory were entitled to recover because of his accidental injury. The case was decided upon the theory that a larger volume of such gas was permitted to escape than would have been the case if the company had used the proper degree of care to prevent it.

■ Plaintiff in error is able to point with reasonable certainty to the definite time, place, and cause of his injury, that is, the unusually severe gassing received on March 9th and 10th while placing tubing in the oil well. It is not essential that he should be able to show the very moment such injury was inflicted. As said by Schneider in his Work on Compensation Law, § 223: "The disease must come from an injury although that injury may not be a single definite act, but may extend over a period of time." In this case a report was made by the plaintiff in error's company that he had been injured by being gassed upon March 9th and 10th while placing tubing in a well, and this occasion was treated by all the parties concerned as being the one when his injury was in fact inflicted.

Defendant in error relies principally upon the case of Ætna Life Insurance Company v. Graham, 284 S. W. 931, decided by this commission, and other cases along similar lines. We think, however, such cases are readily distinguishable from the case before us. In the Graham Case it appears it was the duty of Miss Graham to stir and boil various chemicals used in the manufacture of shoe polish. As a necessary incident to the mixing of these chemicals there arose certain gasses and fumes which were more or less poisonous and irritating. As a result of inhaling these fumes over a considerable period of time she contracted tuberculosis with fatal results. This commission held her death resulted from an occupational disease and not from an accidental injury.

There are two features which differentiate the Graham Case from this one. The first is in the former case it was not shown that the escaping of the fumes from the chemicals could have been prevented or lessened by the exercise of proper care on the part of the employer to furnish his employees a safe place to work; and, second, it was the continuous and gradual inhalation of these fumes which

brought about the employee's injured condition.

In this case it is shown plaintiff in error received an unusual and heavy gassing at a particular and definite time, the result of which was to inflict a structural injury to his physical body. The injury in the Graham Case was one brought about by such a slow and gradual process that it could not be said her injury was received at any particular time. It was merely the cumulative effect of her continuous exposure to a danger necessarily incident to the performance of her duties. The same distinguishing characteristics exist in the case of Gordon v. Travelers' Ins. Co. (Tex. Civ. App.) 287 S. W. 911.

This accident might have happened to any person, regardless of occupation, who had occasion to be in the position in the drilling rig occupied by plaintiff in error. In the cases relied on by defendant in error no one but an employee could have been subjected to the character of injury received by the claimants. In other words, it required a long and continuous service in connection with the use of chemicals from which dangerous fumes arose to bring about the injury, whereas in this case any person who had entered the drilling rig and chanced to occupy the position of plaintiff in error would have been subjected to the inhalation of the unusual volume of poisonous gas escaping from the well, and it is altogether probable that the inhalation of such gas would have had the same effect upon such person as it did upon plaintiff in error. This being true, his injury was necessarily not the result of the gradual and slow process necessary to constitute an occupational disease.

A disease contracted as the direct result of unusual conditions connected with the work and not as an ordinary or reasonably to be anticipated result of pursuing the same should be considered as an accidental injury. Thus pneumonia caused by the inhalation of gas generated by an explosion has been held to be an accident. Kelly v. Anchelea Coal Co., S. C. 864, 48 Scot. L. R. 768, 4 B. W. C. C. 417. Blindness to an employee received while using wood alcohol in his work due to excessive use during a rush period is an accident within the meaning of the Workmen's Compensation Law. Fidelity & Casualty Co. v. Industrial Accident Commission, 177 Cal. 614, 171 P. 429, L. R. A. 1918F, 856.

What is termed an accident must be something out of the ordinary, unexpected, and definitely located as to time and place. If the injury is incurred gradually in the course of the employment and because thereof, and there is no specific event or occurrence known as a starting point, it should be held to be an occupational disease and not an injury resulting from accident. Tintic Milling Co. v.

Industrial Commission, 60 Utah, 14, 206 P. 278, 23 A. L. R. 325.

Defendant in error also insists as a further ground for the giving of its peremptory instruction by the trial court that the record is devoid of any legal evidence showing that it ever issued to plaintiff in error's employer a policy of insurance under the Workmen's Compensation Law.

It is conceded that an agent of plaintiff in error's employer testified that he understood his company was insured under the Workmen's Compensation Law through a policy issued by defendant in error. It is asserted, however, that such testimony was improperly admitted over defendant in error's objection, and there is no other evidence in the record of sufficient probative force to establish the essential fact that defendant in error had issued a policy of insurance which protected plaintiff in error under the Workmen's Compensation Law as an employee of the Atlantic Production Company.

It was shown without dispute that the above witness made out, upon proper form, a report of plaintiff in error's injury on March 9 and 10, 1928, to the Industrial Accident Board. This report was offered in evidence without objection. One of the answers to a question in the report was that compensation insurance for the company making the report was carried by the Texas Employers' Insurance Association, the defendant in error in this case. It was further shown that the secretary of the Industrial Accident Board notified defendant in error of the claim made against it for plaintiff in error's injury, and that said company acknowledged receipt of such notice by stating that the claim was then under investigation. The defendant in error, Texas Employers' Insurance Association, offered no witness to testify that it had not issued its policy of insurance to plaintiff in error's employer.

We think the circumstances above recited, independent of the testimony to which objection was made, were at least sufficient to prima facie show that defendant in error had issued a policy of insurance to the Atlantic Production Company covering its employees, as very slight evidence should be held sufficient to establish such fact since an insurance company is in position to show conclusively by its records whether such policy has been issued, and it fails to do so. Its failure to offer such evidence in the face of the showing made may be considered as strongly corroborative of the fact that such policy has in fact been issued. Southern Pacific Ry. Co. v. Ulmer (Tex. Civ. App.) 282 S. W. 305; Pullman Co. v. Nelson, 22 Tex. Civ. App. 223, 54 S. W. 624; Royal Neighbors of America v. Fletcher (Tex. Civ. App.) 230 S. W.

476; United States v. Denver Ry. Co., 191 U. S. 84, 24 S. Ct. 33, 48 L. Ed. 106.

It is further complained that plaintiff in error failed to offer proof from which his average weekly wages could be determined, and that, in the absence of such testimony, the requested peremptory instruction should have been given.

The evidence did not furnish a basis for a determination of plaintiff in error's average weekly wages by either of the modes prescribed in subdivisions 1 and 2 of section 1 of article 8309. He had been in his present employment but a few months at the time he was injured. Under such circumstances it was proper to ascertain his average weekly wages under the provision of subdivision 3 of section 1 of said article.

No request having been made for submission of this issue to the jury, it will be presumed that the court in rendering judgment upon the findings of the jury found plaintiff in error's average weekly wages in such manner as to support the judgment rendered. Article 2190, R. S. 1925; U. S. Fidelity & Guaranty Co. v. Morgan (Tex. Civ. App.) 18 S.W. (2d) 810; Texas Employers' Ins. Ass'n v. Manning (Tex. Civ. App.) 299 S. W. 534; Texas Employers' Ins. Ass'n v. Bateman (Tex. Civ. App.) 252 S. W. 339; Texas Employers' Ins. Ass'n v. Russell (Tex. Civ. App.) 16 S.W. (2d) 321.

Other questions raised by defendant in error have been given due consideration and determined not to constitute reversible error.

We recommend that the judgment of the Court of Civil Appeals be reversed and the judgment of the trial court affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.