**TRAVELERS INS. CO. v. NOBLE.**
No. 12684.

Court of Civil Appeals of Texas. Dallas.
April 29, 1939.

Rehearing Denied June 10, 1939.

Thompson, Knight, Baker, Harris & Wright and Pinkney Grissom, all of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

YOUNG, Justice.

Appellant was sued in the trial court by J. R. Noble, as plaintiff, under terms of the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq., by reason of total and partial incapacity alleged to have resulted from personal injuries accidentally sustained on or about August 7, 1936, while employed by the Ford Motor Company. Allegations were that plaintiff, on and before such date, was a laborer, regularly employed in subscriber's body department, where much lead was used; that, at the time of the injury, he was using a machine in grinding lead on the bodies of Ford automobiles, a rubber hose being attached to the grinder, which accidentally became disconnected, resulting in a large quantity of powdered lead, among other materials, being blown into the atmosphere around plaintiff; and into his face, nose, mouth and lungs, making its way into plaintiff's system; that, as a result, he became disabled, his entire body, heart, lungs, blood stream, and internal organs becoming affected by the powdered lead; claiming total disability for 26 weeks and partial incapacity for 245 weeks, recovery being based upon an average weekly wage of $34.61.

Defendant specially denied that plaintiff had suffered accidental personal injury, alleging that lead poisoning, or any effect thereof, was the result of gradual absorption of lead into the system over a long period of time; that plaintiff had been employed at the place where the injury was claimed for a period of eighteen months or more, any lead poisoning being gradually acquired over such length of time, and that his condition was not the result of an accident. Other special defenses were plead. The jury found, following the court's charge embodying affirmative and defensive issues, together with appropriate legal definitions, that plaintiff had sustained accidental personal injuries on August 7, 1936, by reason of powdered lead being blown into his face, nose, and mouth, while in the course of his employment with the Ford Motor Company, fixing total incapacity, as a natural result of same, at 25 weeks and five days; and for 245 weeks partial disability, to begin at the end of the determined period of total incapacity. Plaintiff's average weekly wages were found to be $34.60; that his diminished earning capacity during said partial disability was $24.60, but plaintiff's allegations limited same to $10 per week, and judgment was accordingly rendered in terms of the latter amount; all issues being found favorably to a recovery by plaintiff, from which this appeal was taken.

Appellant's assignments of error, brought forward in appropriate propositions, complained of various portions of the Court's charge and rulings on testimony. Its first series of propositions urged generally that (a) the terms "personal injury" and "injury sustained in the course of employment" omitted and ignored the element of accident; (b) the court's instruction on the burden of proof required defendant to prove the negative of each issue and failed to fix the same on the party pleading the affirmative of the particular questions; (c) the evidence failed to raise issues with respect to average weekly wages, under Art. 8309, sections 1 and 2, and the phrase "just and fair" of section 3 should have been defined; (d) error of the court in permitting plaintiff to introduce certain statements contained in his

notice of injury to the Industrial Accident Board, and in his claim for compensation, as to the fact and date of his injuries. The propositions just detailed are overruled after thorough study. The word "injury" and coordinate legal terms were correctly defined. Art. 8309; American Fidelity & Casualty Co. v. Bradley, Tex.Civ.App., 70 S.W.2d 645; Commercial Standard Ins. Co. v. Noack, Tex.Com.App., 62 S.W.2d 72; Texas Employers' Ins. Ass'n v. Owen et al., Tex.Com.App., 298 S.W. 542; Employers' Liability Assurance Corporation, Limited, v. Light, Tex.Civ.App., 275 S.W. 685; the element of accident being reflected in plaintiff's pleading, the evidence, the court's charge, and jury findings in accordance with settled principles of the adjudicated cases.

Likewise, the form of plaintiff's issues placed the burden of proof where it properly belonged, as shown by issue No. 1, which is quoted below. We do not believe the general instruction in the beginning of the court's charge, as to burden of proof, is susceptible to the criticism made by appellant, in view of the fact that each issue carried its own affirmative burden and was in language heretofore approved by our Supreme Court. Federal Surety Co. v. Smith, Tex.Com.App., 41 S.W. 2d 210; City of Waco v. Diamond et al., Tex.Com.App., 65 S.W.2d 272; see, also, Harrison v. Missouri, Kansas & T. R. Co. of Texas, Tex.Civ.App., 89 S.W.2d 455.

The testimony clearly justified the submission of issues 17, 18 and 19, involving average weekly wage, though plaintiff's testimony may have been contradictory thereon. Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365; Norwich Union Indemnity Co. v. Wilson, Tex.Civ.App., 17 S.W.2d 68, 76. The jury could have well determined that Noble had worked slightly more or less than 300 days in the working year immediately preceding his injury, thereby satisfying the principles enunciated in Petroleum Casualty Co. v. Williams, Tex.Com. App., 15 S.W.2d 553; the finding under issue No. 20 of a just and fair wage thereby becoming surplusage.

Appellant further urges error in admission by the court of a statement from plaintiff's notice of injury to the Industrial Accident Board and similar evidence from his claim to the Board for compensation. In a compensation case, it is necessary for the employe to allege and prove that notice of injury was given within thirty days, and claim for compensation was made within six months, hence no error results in admitting sufficient evidence of these papers to identify them, and to show the dates on which they were filed; it being necessary in the usual case, in absence of stipulations, to obtain jury findings thereon. Art. 8307-4a. Texas Employers' Ins. Ass'n v. Hilderbrandt, Tex.Civ.App., 62 S. W.2d 209; Texas Employers' Ins. Ass'n v. Pugh, Tex.Civ.App., 57 S.W.2d 248. Furthermore, no motion was made to limit the purpose of the above introduction to the issue of notice. Texas Employers' Ins. Ass'n v. Drews, Tex.Civ.App., 297 S.W. 630.

Plaintiff's issue No. 1 is challenged as duplicitous. It reads: "Do you find from a preponderance of the evidence that plaintiff, J. R. Noble, accidentally had a substance blown into his face, nose and mouth on or about August 7, 1936? Answer Yes or No. Answer Yes." We think the issue involved only one ultimate inquiry, i. e., whether plaintiff suffered the accidental experience involved therein, and was proper; a division of the issue, as contended by appellant, being objectionable as requiring evidentiary findings. Hunter et al. v. Porter, Inc., et al., Tex.Civ.App., 81 S.W.2d 774 (Syl. 3).

Appellant's twelfth proposition complains of error in the exclusion of its exhibit No. 1 and of the trial court's refusal to allow a complete bill in connection therewith. The exhibit was a record card of plaintiff's medical examinations, going back more than a year before his injury, there being many notations on the card, the last, only, having been made by defendant's witness, Dr. Dozier, who had been employed by Ford Motor Company less than a month prior to plaintiff's alleged injury, and who was not present at the time the prior notations were made. Sufficient testimony was in the record for the purpose of defendant's bill. The evidence was properly excluded, the medical witness not being precluded from testifying to, and his evidence covering, the single entry made by him on August 1, 1936.

Under the next proposition, the trial court did not err in permitting plaintiff to testify that the substance blown into his face was lead dust, lead being a metal and subject to identification by a person familiar therewith. The voir dire examination of plaintiff on the subject,

by defendant's counsel, we think, showed the witness as qualified to state that lead was being ground off car bodies and the substance involved in his alleged injuries was lead dust. Appellant asserts error in the trial court's refusal to give requested charges 4, 5 and 6, inquiring as to whether "the said J. R. Noble gradually absorbed lead into his system by daily exposure to lead while working for the Ford Motor Company from January, 1935, up until August 10, 1936"; further, whether his incapacity was contributed to by such gradual absorption of lead during such time, and the extent of incapacity, if any, due thereto. Of course, the effect of such issues was to secure a jury finding on the existence of occupational disease, and the extent thereof. We think the court's charge fully covered the defenses embraced in the refused issues, to which the jury returned adverse answers, as shown by given issues 21, 22 and 23, in connection with which was an appropriate definition of "occupational disease". The issues just mentioned, follow: "No. 21. Do you find from a preponderance of the evidence that the disability, if any, of the plaintiff, J. R. Noble, was not caused solely by an occupational disease? Answer. 'His disability was not caused solely by an occupational disease', or 'His disability was caused solely by an occupational disease'. Answer. His disability was not caused solely by an occupational disease. No. 22. Do you find from a preponderance of the evidence that J. R. Noble's incapacity, if any, was not caused by an occupational disease, as that term has been defined to you in this charge? Let your answer be: 'It was not caused by an occupational disease' or 'It was caused by an occupational disease'. Answer. It was not caused by an occupational disease. No. 23. To what extent do you find and believe from a preponderance of the evidence is the said Noble's incapacity, if any, due to an occupational disease? Answer in percentage, if any. Answer. None". The state of the testimony touching the above issues is quite similar to the facts discussed by Judge Leddy in Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464, 466: "Tested by these rules, we think it fairly appears that the condition of plaintiff in error was due to an accidental injury and not to an occupational disease. * * * First, because it appears that the volume of gas which came from the well at the time he sustained his injury was an un-usually heavy one; and the serious consequences which resulted from inhaling such gas can be traced definitely to this particular gassing, and not to the slow and gradual process of inhaling the same during the time he had been in the employment of the Atlantic Production Company. While it is true he had prior to the occasion in question inhaled this gas to some extent, yet it was diluted with a mixture of air and not in a heavy volume; while on the occasion of his injury, heavy escapes of the gas caused him to inhale an unusual amount thereof, which is shown to have resulted in positive injury to the physical structure of his body, that is, to his nasal passages, throat, and lungs."

See, also, Commercial Standard Ins. Co. v. Noack, supra; Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356; Texas Employers' Ins. Ass'n v. Parr, Tex.Civ.App., 16 S.W.2d 354.

It is our conclusion from a close study of this record and the briefs that, this cause has been fairly and thoroughly tried, all elements of law and fact at issue between the parties being properly presented to and considered by the jury. Appellant's assignments and propositions are accordingly overruled and the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

■ Appellant argues with considerable force of no evidence to support Issue No. 17, that plaintiff had worked substantially the whole of the year for the Ford Company immediately preceding his alleged injury, under Subd. 1, Art. 8309, defining average weekly wage. The jury answer thereto was favorable to plaintiff and we deem it proper to quote from the testimony of Noble, which, though not altogether definite and clear, was sufficient to raise the issue. Referring to August 7, 1936, he testified in part:

"Q. Prior to that time, immediately before this time, taking the period you had been working, had you been working continuously for as much as a year before that? A. Yes, sir.

"Q. During that year's time what wages did you earn? A. $6.00 a day.

"Q. How many days a week did you work over that period of time? A. Five and six days a week.

"Q. That had been the case continuously for a period of at least a year before the

782

day you claim you were injured? A. Yes. * * *

"Q. Could you give me an approximation what part of the year you worked six days a week, whether six months or some other part of it? A. Well, probably five or six months during the year.

"Q. Then during the other six or seven months you worked five days a week? A. Yes, sir.

"Q. During the latter time you made $6.00 a day? A. Yes, sir.

"Q. During that time you worked at the Ford Motor Company—you worked a year's time? A. Yes, sir.

"Q. in Dallas County, Texas? A. Yes, sir. * * *

"Q. This happened August 7th, had you worked every day for the last year without stopping? A. Every working day, yes, sir.

"Q. Six days a week for twelve months immediately prior to August the 7th? A. I wouldn't say six days every week.

"Q. You would not have any time off? A. I worked all the time except Sundays and holidays.

"Q. Would you say you worked six days a week, was there some time you didn't work at all? A. They generally close the plant down to change models, it was generally a couple of weeks for that purpose.

"Q. When was that? A. I don't remember the date, but I worked while the plant was shut down, that is, most of the time and maybe every day, I don't remember.

"Q. Would you say you worked any week only three days or two days. A. I wouldn't say that.

"Q. You worked some every week? A. I think I did.

"Q. How many days do you think you worked during the year? A. I never kept up with it, I would say around 285 days though.

"Q. Of course you punched a clock as to the time and the records would show? A. Yes, sir."

From the last answer, we can infer that the exact record of appellee's working days during the particular period could have been determined from his employer, but was not produced. Appellant's motion for rehearing, after thorough consideration, is in all things overruled.