**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Mary MARTINEZ, Appellee.**

No. 12862.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 26, 1955.

Rehearing Denied Nov. 23, 1955.

 

Eskridge, Groce & Hebdon, San Antonio, for appellant.

Arthur A. Domangue, Putman & Putman, Richard G. Strong, San Antonio, for appellee.

W. O. MURRAY, Chief Justice.

This is a workmen's compensation case. The claimant and employee is Mary Martinez, the employer is Kerrville Bus Company, and the insurance carrier, Texas Employers' Insurance Association.

Prior to November 12, 1953, Mary Martinez was employed by the bus company as a bus cleaner. The jury found that on that date she sustained an injury which resulted in her total and permanent incapacity, fixing her weekly wage rate at $45.75, under Subdivision 2, Section 1, Article 8309, Vernon's Ann.Civil Stats.

The trial court entered judgment in favor of Mary Martinez for total and permanent incapacity in a lump sum, and Texas Employers' Insurance Association has prosecuted this appeal.

Appellant's first point is that the court erred in rendering judgment under said Subdivision 2, because plaintiff wholly failed to prove that there was another employee doing the same class of work as the plaintiff, who had worked substantially a year immediately prior to the accident. We overrule this point. Admittedly, Subdivision 1, Section 1, of Article 8309, supra, does not apply in this case. The evidence was sufficient to support the finding of the jury that there were other employees who worked substantially the whole of the year preceding the date of appellee's injury, in the same or similar employment. Demand was made upon appellant for a number of admissions, number seven of which reads as follows:

"7. That no employee of the Kerrville Bus Company, Inc., in the year preceding November 12, 1953, doing the same type or similar work that Mary Martinez had been doing, worked as much as 300 days."

Appellant's answer was as follows:

"7. Defendant is unable to answer this question because a truthful answer would require an exhaustive study of the books of the Kerrville Bus Company, Inc., and the demand for admissions rule does not contemplate requiring the opposing party to do that kind of work or to answer one of the ultimate issues that plaintiff must prove by preponderance of the evidence."

Rufus C. Mathews, who was the division superintendent for the Kerrville Bus Company, testified at the trial on this matter as follows:

"Q. And what is the usual standard work week of bus companies, not only yours but bus companies in the surrounding territory? That's in San Antonio here. Does that operate on a five or six day week? A. We operate on a six day week.

"Q. How about other bus companies? A. Well, I don't know; I can't answer that.

"Q. All right. A. I don't know what they do.

"Q. You operate on a six day week? A. Yes.

"Q. And that has continued for how long? A. Well, it's continued since I have been in San Antonio, which was 1943. That was the policy then.

"Q. All right, sir, that is the policy. Now, for people who had the occupation that Mary Martinez had with your company, that is in the same or similar occupation with your company or with other companies that you know of, did they work a six day week? A. Some of them did; some of them didn't.

"Q. Well, what is the general practice? That's what we are trying to find out. A. Our general practice, as I stated before, was the six day week.

"Q. All right, sir. So, with your company then, and for all persons of Mary Martinez' job classification, that was a six day week? A. Yes.

"Q. And that had existed for a period of a year preceding November 12, 1953, a year back? A. Well, as a general practice in the shop yes, but we had no women employed in our shop until we employed Mary Martinez and the other girl, Alexandria Silva.

"Q. Regardless of whether it was a man or woman that was doing the job, you had bus cleaners? A. Yes, that's right.

"Q. And busses had been cleaned and in that type of work— A. That's right.

"Q. —it was the usual and customary practice of your company, for a period of a year before November, 1953, to work a six day week? A. That's right.

"Q. That would be approximately 300 days a year then, 52 weeks to the year and 6 days a week? A. Well, I guess so; I haven't figured it up, about that.

"Q. 52 weeks a year, so it would be about 300 days? A. Yes.

"Q. Is that with or without holidays? Did you observe any holidays, days that they did not clean those busses, or did she clean them regardless? A. Well, I would say that those people would be given holidays off because it was not essential. The people who were essential to keeping the busses operating did, part of them do work on holidays.

"Q. So, they did work then, people in her classification did work substantially 300 days for the year preceding November, 1953? A. I will state it this way. The work was there for them. We let them off when they wanted a day off, but it as there for them and that was the regular procedure.

"Q. And they worked a 9 hour day? A. Yes.

"Q. 54 hour week? A. That's right. * * *

"Q. What did you pay the men bus cleaners before you put her on? A. The same price, 75¢ an hour.

"Q. How about this other lady? A. 75¢ an hour."

This evidence was in effect an admission by the Kerrville Bus Company's division superintendent that the bus company had in its employment people doing the same type work as Mary Martinez had been doing, who worked substantially 300 days a year prior to November 12, 1953, the date on which Mary Martinez slipped and fell on the concrete floor. The fact that they might have had a few holidays would not prevent them from being regarded as having worked substantially a year.

 Appellant offered no evidence to the contrary, and no real issue was made of this matter by appellant. Under such circumstances slight evidence is sufficient to establish a prima facie case. Texas Employers' Ins. Ass'n v. Locke, Tex.Civ. App., 224 S.W.2d 755.

For the reasons above stated, we overrule appellant's points 2 and 3, setting up contentions of "no evidence" and "insufficient evidence" to support the jury's finding that there was another employee doing the same class of work as appellee, who had worked substantially a year immediately prior to the accident.

Even if the evidence was insufficient to support the finding of the jury that anyone else doing similar work as appellee, worked for substantially a year prior to appellee's injury, we are of the opinion that appellant has not shown prejudicial injury which would call for a reversal of this judgment. It appears from the evidence that if appellee's average weekly wage had been determined under any other subdivision of said Section 1, it would have been, as a matter of law, more than $25 per week, the maximum allowed by law. Consolidated Cas.

Ins. Co. v. Ray, Tex.Civ.App., 267 S.W.2d 880; National Indemnity Underwriters of America v. Rocamontes, Tex.Civ.App., 110 S.W.2d 228.

Appellant's points 4 and 5 refer to insufficient evidence and no evidence to support the finding of the jury, and point 6 relates to its contention that the finding of the jury "was so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust." We overrule these points. We have examined the evidence and find it sufficient to support the finding of the jury as to total and permanent disability of appellee. It is true that there are conflicts in the evidence, but the jury has resolved these in favor of appellee.

The judgment is affirmed.