**TRANSPORT INSURANCE COMPANY,**
Appellant,

v.

Joel R. COSSABOON, Appellee.

No. 5177.

Court of Civil Appeals of Texas.

El Paso.

May 9, 1956.

Rehearing Denied May 29, 1956.

John H. Hall, Strasburger, Price, Kelton, Miller &' Martin, Dallas, for appellant.

West, Howard & Mitchell, Dallas, for appellee.

FRASER, Justice.

This is a workmen's compensation case, wherein Joel R. Cossaboon alleged that he sustained, on October 8, 1954, two hernias while working for his employer, Gillette Motor Transport, Inc., in Dallas County, Texas. He alleged total permanent disability, and sought recovery therefor. Defendant, Transport Insurance Company, the compensation carrier for the plaintiff's employer, denied that Cossaboon had any of the accidental injuries alleged, and averred that his incapacity, if any, resulted from disease or natural causes having no relation to his employment. Based on a jury's verdict, the court rendered judgment for the plaintiff for 260 weeks' total disability and 141 weeks' partial disability, at the rate of 50%, which amounted to $24.63 per week, $25 being the maximum for total disability.

Transport Insurance Company's motion for a new trial, duly and timely filed, was in all things overruled by the trial court, and Transport Insurance Company has duly perfected its appeal to this court, which now has jurisdiction of the cause.

Appellant's first point of error is directed at the submission of Special Issue No. 19, which inquires whether or not one or more employees of the same class as plaintiff had worked substantially the whole of the year preceding the date of plaintiff's injury. Appellant claims that there was no competent evidence to justify the submission of such issue.

The record reveals that appellee, who was plaintiff below, had not worked a full year for his employer immediately prior to his injury. In submitting his proof under art. 8309, Vernon's Ann.Civ.St. appellee presented several witnesses as follows:

One Simmons testified that he had worked for the Gillette Motor Transport Company since 1952, and had been steadily employed in the same capacity as was appellee, and that he had worked every working day, and had worked substantially the whole of the year from October 8, 1953 to October 8, 1954, and that he was paid for his vacation and legal holidays at the regular wage scale, and that these days were considered working days.

Witness Zanello worked for the company since 1951, and testified that he had worked every working day from October 8, 1953, to October 8, 1954 in the same classification

and employment as appellee, and that he too was paid for his vacation and legal holidays, and that they were considered working days.

Witness Ben H. Lovran, secretary of the company, testified that all employees worked under Union regulations, and that there were employees who worked steadily during the year 1953 through 1954, 5½ days a week. This witness verified that there were six legal holidays and that employees were paid for them and their vacations, and that such legal holidays were considered working days; that there were employees who had worked 281 days during the year of October 8, 1953 to October 8, 1954, which, plus the six legal holidays which were considered working days, made a total of 287 days. He also testified that employees in the same classification as appellee earned $1.70 per hour, or $85 per week, or a total of $4,270 per year.

We think there was ample evidence to submit issue 19 to the jury, and ample evidence under the statute to prove the wage scale. It has been held that even slight evidence is sufficient to establish a prima facie wage rate. Appellant here has not denied or contradicted the evidence offered, but contends that it was insufficient, and we think under the circumstances slight evidence would have been sufficient. Texas Emp. Ins. Ass'n v. Martinez, Tex.Civ.App., 284 S.W.2d 198; Texas Emp. Ins. Ass'n v. Locke, Tex.Civ.App., 224 S.W.2d 755; Texas Emp. Ins. Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399; Travelers Ins. Co. v. Noble, Tex.Civ.App., 129 S.W.2d 778; Southern Underwriters v. Jordan, Tex.Civ.App., 122 S.W.2d 260. We therefore hold that appellee has substantially complied with the statute, and overrule appellant's first point.

Appellant's second point charges the trial court with error for refusing an affirmative instruction to the jury charging them not to allow incapacity or disability to the plaintiff due to prostate trouble or other illnesses unconnected with his employment. We do not find any merit in this point. Dr. Lanier, witness for the appellant and doctor for the insurance company, examined appellee prior to his employment in October 1954, and certified him as physically fit for work. Defendant did not contend that any pre-existing injury or disease was the sole cause of disability, nor did the requested instruction attempt to limit the extent that any pre-existing conditions might have contributed to appellee's disability. We do not find sufficient evidence in the record to warrant the submission of the requested instruction, especially in view of the trial judge's definition of the term "injury", which pointed out to the jury that it was to be construed to mean damage or harm to the physical structure of the body, and such diseases and infections as naturally result therefrom, and requiring the jury to ascertain if the injury was a producing cause of any disability found by the jury. This point is overruled.

Appellant's third point complains of the argument of one of the attorneys for the appellee. It appears that the attorney was commenting on a witness, one Dr. Cheek, and said among other things:

"Then Mr. Ramsay goes out on Thursday night before he testifies on Friday and gets a doctor that Cossaboon had gone to for an examination and he said—Dr. Cheek—he said he didn't give him a report and he didn't pay him; of course, he couldn't pay—he knew that, but why would he seek to get—seek to get the name of the employer? Had he heard? Had heard of the clientele that Dr. Gault had built up of representing 184 insurance companies? There must be a reason for it. Then, he comes down here and tells you that he could have a hernia and he could not; he didn't know whether or not he had a hernia—I am talking about Dr. Cheek, but he is available to them. Do you reckon that like some few in the past, let's say, of the 2000 years that have road by that he heard the tinkle of the 30 pieces of silver?"

We do not think that appellant has or can show probable harm likely to cause an improper verdict as a result of this argument. The attorney did not accuse the witness of perjury, but a fair analysis of his statement is simply that appellee was bitter about the doctor seemingly testifying as a witness friendly to the other side, but did not accuse him of perjury. All things considered, the trial court must have had some reason for making the statement he did in answer to the objection, in which statement the trial court pointed out that attorneys have a right to make reasonable deductions from the testimony of witnesses. This point is overruled.

Appellant's fourth point complains of alleged improper conduct on the part of appellee's attorney in cross-examining appellant's witness Dr. Terry. We do not deem it necessary to burden the record with the testimony other than to mention that the questions had largely to do with whether or not Dr. Terry would recognize and identify his partner, Dr. Gault's, signature on a letter or report, which report was never submitted to the jury and never admitted into evidence. We find no harm in the transaction, and no merit in appellant's fourth point.

Appellant's fifth point alleges error in the refusal of the trial court to permit defendant to prove that appellee had been convicted of burglary in the state of New Jersey in the year 1939, and in refusing to permit defendant to offer in connection therewith testimony as to other law violations. In many cases it has been held that the fact that a litigant has been convicted of a felony or misdemeanor involving moral turpitude may be introduced in evidence as bearing upon his credibility where he becomes a witness in his own behalf. General Ins. Corp. v. Handy, Tex. Civ.App., 267 S.W.2d 622; Kennedy v. International—G. N. R. Co., Tex.Com.App., 1 S.W.2d 581; McCormick & Ray, Secs. 311 to 313. This rule, however, is limited to exclude crimes because of remoteness. Tex.Jur. Vol. 45, Secs. 250, 256, 257.

Appellant contends that he was entitled to show that since the 1939 conviction appellee had been several times called up for being in arrears, for non-support, and that he was in arrears at the date of the trial, and there was supposed to be some kind of a warrant out for him over the same trouble. Appellee denied knowledge of an existing warrant, but admitted he had been in arrears several times for support payments, but that he had never been convicted of any charge thereunder. Appellant also sought to introduce several other convictions occurring before 1939. We think the trial court was correct in sustaining the objections to this testimony. The particular conviction in 1939 is too remote to be available for the purpose offered, as are the matters transpiring before that date. The incidents since 1939 do not come under the rule, as they are not matters involving moral turpitude, and certainly there was no trial and conviction. It is an old rule, and a good rule, that it is the duty of the trial court to try the law suit and not the individual litigant, for it has been said many times "A bad person may have a good law suit", and a jury should not be prejudiced by remote convictions as it is presumed after the lapse of many years that the rehabilitation has been successful and the individual has reformed. This may be refuted by subsequent acts of misconduct, but here we have only offered testimony that this appellee, like many other men did over a period of sixteen years or more, several times get behind in his support payments. This is not sufficient to rebut the presumption of reform. We do not think there is merit in this fifth point of appellant, for the reasons above stated, if summed up briefly, are simply that the particular conviction in 1939 and the ones before that are too remote and the proffered testimony as to subsequent incidents is not sufficient to overcome the presumption of reform. General Ins. Co. v. Handy, Tex.Civ.App., 267 S.W.2d 622; Kansas City, M. & O. Ry. Co. v. Foster, Tex.Civ.App., 38 S.W.2d 391.

Appellant's points are therefore all overruled, and the decision of the trial court affirmed.