INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA, Appellant,

v.

L. C. REDIC, Appellee.

No. 15776.

Court of Civil Appeals of Texas.

Dallas.

March 3, 1961.

Rehearing Denied April 7, 1961.

Ramey, Brelsford, Hull & Flock, and Donald Carroll, Tyler, for appellant.

Justice, Justice & Kugle, William Wayne Justice, Athens, for appellee.

WILLIAMS, Justice.

This is a workmen's compensation case. Appellee, L. C. Redic, sustained an accidental personal injury on June 24, 1957

while engaged in the course and scope of his employment with Harbison-Walker Refractories in Henderson County, Texas. Appellee brought this action to recover total and permanent disability benefits. The trial, before the court and jury, resulted in a verdict for appellee and thereafter judgment was rendered in his favor for total and permanent disability benefits with compensation rate fixed at $25.00 per week, being the maximum rate then existing.

Appellant, by its points thirteen through nineteen, inclusive, grouped together, complains of the action of the trial court in giving additional and peremptory instructions to the jury concerning appellee's wage rate. The record reveals that the court submitted the case to the jury upon special issues, including the usual and familiar issues concerning wage rate under Subdivisions 1, 2 and 3, of Paragraph 1, Art. 8309, V.A.C.S. Under Subdivision 1, the court submitted special issue No. 10: "Do you find from a preponderance of the evidence that L. C. Redic worked in the employment in which he was working on June 24, 1957, substantially the whole of the year immediately preceding such date?" Based upon an affirmative answer to this question the court submitted special issue No. 11 inquiring as to the average weekly wage of the employee during such year immediately preceding the injury. Conditionally submitted on a negative answer to special issue No. 10, the court submitted special issue No. 12, under Subdivision 2 of the Statute, inquiring whether any other employee as the same class as appellee worked substantially the whole of the year immediately preceding the date of the injury, and special issue No. 13, the average weekly wage of such other employee. Also conditionally submitted on a negative answer to special issue No. 10, the court submitted special issue No. 14, under Subdivision 3, inquiring as to what would be the average weekly wage which would be just and fair to both parties. After the jury had been in deliberation for several hours,

it reported to the court that it had reached a verdict. The jury was brought into the court room and the Judge examined the charge. In the presence of the attorneys for both parties the court informed counsel that the jury had answered special issue. No. 10 "Yes" (finding that the appellee had worked substantially the whole of the year preceding the date of his injury), and special issue No. 11, "$82.84". Over timely objections made in writing by appellant's counsel, the court gave the following additional charge to the jury, to-wit:

"Ladies and Gentlemen of the Jury: The evidence in this case is that no person worked substantially the whole of a year for Harbison & Walker during the year immediately preceding June 24, 1957. Therefore, the answer to special issue No. 10 should be 'no'. You are further instructed that if you will then proceed with your consideration to special issue Nos. 12, 13 and 14, and answer either 12 and 13, or answer 14 (without answering special issues 12 and 13) as you find the facts to be. You will delete your answer to special issue No. 11."

A few minutes after the jury had retired the court re-called the jury and, over vigorous objections of appellant's counsel, gave another charge as follows:

"Ladies and Gentlemen of the Jury: The evidence in this case is that no person worked substantially the whole of the year for Harbison & Walker during the year immediately preceding June 24, 1957. Therefore, the answer to special issue No. 10, should be 'no'. You will then start with special issue No. 12 and proceed with the answers through 12, 13 and 14 considering all instructions preceding each issue. You will delete your answer to special issue No. 11."

The trial court's action (as revealed by appellant's Bill of Exceptions. Nos. 1 and 2) clearly reflects error. Neither

Rule 286, nor Rule 295, Texas Rules of Civil Procedure, authorizes the trial judge to peremptorily instruct the jury to answer a special issue given in any particular manner. Neither was the court's action in accordance with the provisions of Rule 301, T.R.C.P., which provides that upon proper hearing, following notice, the court may set aside and disregard the answer of the jury to issues not supported by the evidence.

In Hines v. Parks, 128 Tex. 289, 96 S.W.2d 970, 971, the Commission of Appeals said: "We think the authorities unquestionably establish the proposition that if the trial court submits an issue to the jury which under the pleadings is a material one to the decision of the case, and the jury is permitted to answer that issue, which answer is received by the court, then, under the statute, the trial court is without discretion except to set aside the finding and grant a new trial, or to render judgment upon and in conformity to the finding, even though the court should conclude that all of the testimony on which the answer to such issue is based was improperly admitted, and there is no evidence to uphold the finding."

In Texas Employers' Ins. Ass'n v. Schaffer, Tex.Civ.App.1942, 161 S.W.2d 328, 332 (writ denied, n. r. e.), the court said: "The court had no authority to disregard Special Issues Nos. 16, 16A and 17, until his jurisdiction was invoked to set aside such issues."

A similar factual situation was presented in Texas Employers' Ins. Ass'n v. Collins, Tex.Civ.App.1959, 321 S.W.2d 119 (writ ref. n. r. e.). There the wage rate was submitted similarly to the case under consideration and the jury answered Subdivision 1 and the average weekly wage thereunder. Subdivisions 2 and 3 were conditionally submitted subject to an affirmative answer of the issue relating to Subdivision 1. Therefore, the jury did not answer those two issues. The verdict was accepted and filed but before the jury was discharged the trial court, over objection, directed the jury to disregard the conditional submission of the issues under Subdivisions 2 and 3 and return to the jury room and answer same. It is to be noted that the trial judge did not instruct the jury to change its answers to any issues nor to find in any particular manner but merely instructed them to return and complete their verdict. The jury answered the remaining issues and, upon proper motion under Rule 301, the court ordered that the jury's answers to the issues relating to Subdivision 1, being unsupported by the evidence, be disregarded and granted appellee's motion to enter judgment based upon the remaining issues answered by the jury. The Court of Civil Appeals affirmed this action, pointing out that in a situation of this kind Rule 301, T.R.C.P., should be followed.

See also McDonald's Civil Practice, Vol. 4, Paragraph 17.32, pp. 1412 and 1415; Aetna Casualty & Surety Co. v. Davis, Tex. Civ.App., 1946, 196 S.W.2d 35, and Kurtz v. Robinson, Tex.Civ.App.1952, 256 S.W.2d 1003.

■ The trial court in this case, having submitted special issue No. 10, and its ancillary issue No. 11, to the jury, and the jury having answered said issues, was relegated to the relief afforded by Rule 301, T.R.C.P., as was done by the trial judge in the Collins case, supra, if he were of the opinion that the evidence was insufficient to have submitted the issue to the jury in the first place. His action, as reflected by the record, was contrary to the orderly processes designed by our Rules of Civil Procedure.

Appellee earnestly contends that if the above action on the part of the trial court constituted error, that such should be held by us to be harmless error under Rule 434, T.R.C.P. He contends that the error of the trial court would be harmless, and no injury would result to appellant, because the jury found, in response to issue No. 12, submitted under Subdivision 2, § 1, Art. 8309, V.A.C.S., that another employee of the same class as appellee did work substantially the whole of the year preceding the

date of the injury and that the wage of such other employee was also found, thereby affording a basis for a judgment for the maximum amount of compensation. In keeping with the clear mandate of the Supreme Court that the workmen's compensation law should be liberally construed in order to effectively attain the beneficial results of the Act, we have carefully considered this question of possible harmless error. Having considered the record as a whole, we find ourselves unable to agree with appellee that the error of the trial court, as reflected, was harmless.

By its points 5, 6, 7, 8, 9 and 23, grouped together, appellant contends that under the peculiar facts and circumstances as developed by this record that this case was not such a one as called for the application of the determination of the appellee's wage rate under either Subdivisions 1 or 2 of § 1, Art. 8309, V.A.C.S., but on the contrary such wage rate could only be found under the third Subsection of that Article, namely, that which would be fair and just to both parties. Appellant complained of the action of the trial court in submitting the issues under Subdivisions 1 and 2, and also in rendering judgment based upon the jury's findings under Subdivision 2 of the Article. The jury never answered the issue No. 14 which had to do with the wage rate under Subdivision 3. We sustain appellant's points thus presented.

■ Probably no rule of law in workmen's compensation cases is more firmly established than that which provides that the claimant has the burden of establishing his average weekly wage rate by one of the three methods provided for in Art. 8309, Paragraph 1, Subdivisions 1, 2 or 3, and in the order named, i. e., he must show that such cannot be computed under Subdivision 1 before he can resort to Subdivision 2, then, if the computation cannot be made under 1 or 2, he may resort to Subdivision 3. This rule was established early by the case of American Employers' Ins. Co. v. Singleton, Tex.Com.App., 24 S.W.2d 26, and is

the law today. Texas Employers' Ins. Ass'n v. Ford, 153 Tex. 470, 271 S.W.2d 397.

The appellee in this case alleged that he had been employed in the same kind of work which he was doing at the time of his injury on June 24, 1957, for substantially the whole of the year preceding; that if not, another employee of the same class had performed such work, or similar work for the requisite time; and if not, then his average weekly wage should be computed under the third Subdivision, or that which would be fair and just to the parties. However, his proof revealed that he had worked for Harbison-Walker for a number of years and that his *regular* job was that of a laborer, wheeling bricks with a wheelbarrow; that such work was irregular and that he was laid-off from time to time; and while he was not working for Harbison-Walker the only other work he did was for the railroad, but there is absolutely no testimony as to the nature and character of the work performed by him for the railroad. While performing this work as a laborer wheeling bricks in a wheelbarrow he testified that he usually worked eight hours, with very little overtime, five days a week, and that this work was on a *piece basis*. Another witness for appellee, President of the Union at Harbison-Walker, testified that the type of work usually done by appellee was *piece work*, that as such workers were paid so much per thousand brick, depending upon the type of brick. (Emphasis supplied.) The testimony is abundant to the effect that due to the irregular type of work no employee worked for Harbison-Walker for as much as 300 days during the preceding year of appellee's injury. However, as pointed out above there is no evidence as to the details of the work, nor the time thereof, performed by appellee for other employers during that period of time. There is evidence that during the year immediately preceding June 24, 1957, Redic received $2,205.59 while working for Harbison-Walker. There is no evidence of his earnings from other sources.

Now, other than performing the usual work which he had been performing for Harbison-Walker, on the very day that he was injured, and at the very time he was injured, the evidence is undisputed that appellee was temporarily operating a "tow-motor" truck lift, with which machine he was attempting to transport loads of brick into a box car. He testified that he was not very familiar with this operation and had only tried to do it once or twice before. According to his own testimony, and that of superiors, this work being done at the time of his injury was temporary, and there was no assurance that he would be given this kind of work in the future. Fork-lift operators were paid at the rate of $1.-83.3 per hour for an eight hour day, but the evidence revealed that there was no other fork-lift operator who worked as many as 300 days during the preceding year for Harbison-Walker. Over vigorous objection testimony was introduced by appellee to the effect that another employee, working for Athens Canning Company Plant, and operating a fork lift, did work substantially the whole of the year preceding June 24, 1957 on which such employee was paid $1 per hour, plus over-time. Under some special type of legislation the Athens Canning Company operated in such a manner as to permit over-time for this class of employees so that it was possible for him to make $14 or $16 per day.

It was upon this testimony concerning another employee, performing regular work as a tow-lift operator, that the trial court submitted and received the findings from the jury concerning wages under Subdivision 2 of the Statute. The jury found that such other employee did work the necessary period of time and that his average weekly wage was $80.76, obviously basing this upon an earning of $14 per day. In doing so we find that the court was in error.

The evidence in this case is wholly lacking in sufficiency to establish that the claimant Redic sustained his burden of proof to negative Subdivision 1. Having failed in this burden it would be error for the court to base the judgment upon the wage rate of another employee under Subdivision 2. American Employers' Co. v. Singleton, supra.

■ Moreover, it is obvious from a reading of the entire record in this case that this state of facts presents a situation for the application of determining the wage rate only under Subdivision 3, § 1, Art. 8309, V.A.C.S. This Subdivision expressly provides that when by reason of the shortness of the time of the employment of the employee, or other good and sufficient reasons, it is impractical to compute the average weekly wage under Subdivisions 1 and 2, then it shall be computed by the court in a manner just and fair to both parties. In view of the shortness of time which Redic performed the actual work which he was performing at the time of his injury, and in view of the fact that wages paid for this type of work which was different from his ordinary work, were higher and of a different character, good and sufficient reasons exist for resort to Subdivision 3 only. It would be manifestly unjust and unfair to permit appellee in this case to recover based upon wages paid at a higher rate for a particular job being done temporarily and with no assurance of permanency. It is admitted by all parties that the work being done by Redic at the time he was injured was an isolated task different and apart from his regular work which consisted of pushing a wheelbarrow. It is also admitted that there was no assurance that he would perform this work or receive the pay therefor, at any time after he completed this temporary task.

It is our opinion that the facts revealed by this record brings this case clearly within the ambit of the principle announced by Judge Critz in Petroleum Casualty Company v. Williams, Tex.Com.App., 15 S.W. 2d 553, 556. In holding that Subdivision 3 was applicable to a situation of temporary employment, Judge Critz said:

"* * * said record shows that the classes of labor performed by deceased were varied, and intermingled and interspersed throughout the year, at wages ranging from $4.50 per day, when working as a 'helper' to $6 per day when working as a 'gang pusher', and since there is nothing in the record to show that the class of employment engaged in at the time of injury was a permanent employment, it would be manifestly unjust and unfair, and therefore impractical, within the meaning of subdivision 3, to apply subdivision 2, and therefore subdivision 3 will have to be applied. * * * Of course where the employment record shows that the injured employe has been permanently promoted at a higher wage, and at the time of injury is working at such permanently higher wage, it would be right and proper in such a case to compute the average annual wages for the purposes of allowing compensation on the basis of the wages received at the time of injury. Conversely, the same rule would apply where the employe has been permanently demoted at lower wages. This construction of the statute is in harmony with logic and sound economic principles, and such may be looked to in construing the * * * purpose of the statute, where it aids the court in doing so."

The Williams case, supra, has been consistently followed and is recognized to be the law at this time. Applying this principle to the case under consideration we find that appellee's wage should have been computed under Subdivision 3, and there being no findings under such Subdivision to support a judgment, the case must be reversed.

 Appellant, in another group of points, contends that the jury findings to the effect that appellee was permanently disabled is not supported by any evidence or, alternatively, the evidence is insufficient to support such findings. We have care-

fully reviewed the entire record concerning appellee's disability from the severe injuries sustained by him, and we are unable to agree with appellant in this regard. Appellee's testimony, together with that of his medical witnesses, and also many lay witnesses, demonstrate clearly that there is ample evidence to support the jury's findings of permanent disability. These points are therefore overruled.

We have carefully considered the remaining procedural points raised by appellant and finding them to be without merit, overrule the same.

The judgment of the trial court is reversed and remanded.